STATE OF CONNECTICUT *v.* RON J. SUN
(AC 25427)

Flynn, DiPentima and Harper, Js.

Argued September 13—officially released December 20, 2005

*Erroll V. Skyers,* for the appellant (defendant).

*Melissa S. Brechlin,* assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, and *Maureen V. Ornousky,* senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Ron J. Sun, appeals from the judgment of conviction, rendered after a jury trial, of three counts of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (2).[1] The defendant claims that the trial court improperly (1) denied his request to compel the victim[2] to submit to a psychological examination, (2) permitted the state to elicit testimony from the victim's cousin, (3) instructed the jury with regard to the testimony of the victim's cousin and (4) permitted the state to amend its information at the close of the state's case-in-chief. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At all relevant times, the victim and her mother lived in a bedroom in a house owned by the defendant. The victim's mother rented that living space from the defendant. The defendant and his girlfriend lived in the house along with other tenants, who included his sister and his niece. The following three incidents involving the defendant and the victim transpired when the victim was seven years old.

---

[1] The court sentenced the defendant to a total effective term of incarceration of ten years, execution suspended after six and one-half years, followed by twenty years of probation.

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

On one occasion, the defendant and the victim were in the defendant's bedroom using his computer. The defendant placed his hands between the victim's legs and made contact with the victim's intimate parts.[3] After a few seconds, the defendant stopped touching the victim and instructed her not to tell her mother what had transpired.

On another occasion, the defendant and the victim were sitting together on the defendant's bed and watching television. The defendant inserted a videocassette into a videocassette recorder and displayed a video that depicted pornographic images. The defendant returned to the bed, placed one of his hands in the victim's underpants and made contact with the victim's intimate parts.

On a third occasion, the victim and her cousin, E, who was the same age as the victim, were bathing in a hot tub located in the defendant's backyard. The victim was wearing shorts and a T-shirt. The defendant, wearing shorts, got into the hot tub with the children. The defendant pulled the victim toward him and positioned her in his lap. The defendant took one of the victim's hands in his hand, placed her hand in his shorts and moved her hand up and down on his penis. When the victim's mother called to the victim shortly thereafter, both the victim and her cousin got out of the hot tub. The defendant warned the victim not to tell anyone about what had transpired or she would "get in trouble [with her] mother." Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion to conduct a psychological examination of the victim. We disagree.

___

[3] General Statutes § 53a-65 (8) defines "intimate parts" as "the genital area, groin, anus, inner thighs, buttocks or breasts."

Prior to the start of trial, the defendant filed a motion asking the court to require the victim to submit to a "psychological examination" by a "psychologist to be selected by the defendant." The defendant argued in his motion that he "must be afforded the opportunity to have a psychologist examine the complainant['s] mental attitudes prior to trial . . . ." The defendant further argued that "the complainant has been at all relevant times of the incident alleged exposed continually to sexual circumstances and sexual situations through her mother . . . ." In support of his motion, the defendant filed an affidavit from his niece who lived in his house during the time in which the victim lived in his house.

The defendant's niece averred that the "rule of the [defendant's] house" was that the victim did not visit with the defendant unaccompanied by other persons and that she never observed the defendant entertain the victim or spend time alone with her. The defendant's niece also averred that once a week, the victim's mother and her boyfriend engaged in sexual intercourse, in the victim's presence, in the room shared by the victim and the victim's mother. The victim told the niece that she pretended to be asleep during those encounters. In her affidavit, the niece also stated that at least once a week, she smelled marijuana coming from the room occupied by the victim's mother and that she chastised the victim's mother for smoking marijuana in the victim's presence.

The defendant's niece further averred that the victim's mother was "somewhat excessive in her physical discipline" of the victim and that "she often struck [the victim] on her legs with a belt." She added that the victim confided in her that she was afraid of her mother and of being struck with the belt. Finally, the niece averred that she made the defendant aware of the fact that the victim's mother engaged in sexual activities and smoked marijuana in the presence of the victim

and that the defendant told her that he had confronted the victim's mother about those behaviors.

During argument on the motion, the defendant's attorney stated that neither the defense nor the state had conducted a psychological examination of the victim. The defendant's attorney emphasized that the defense had a right to examine the victim's "mental state" in order to disprove the charges against the defendant. The defendant's attorney asserted that the defendant stood charged with having inflicted mental harm on the victim and that "there has to be some sort of memorialization or evaluation or something that shows what this mental harm is." The defendant's attorney argued: "If, in fact, these mental offenses did occur, it would make sense that some sort of psychological or psychiatric evaluation [occur]. . . . [S]ince the issues are mental, since the state by its allegations [is] putting mental state in issue, [an examination] is what we really need to mount a real defense, to put our case forward."

The defendant's attorney also argued that an examination was necessary for the defendant to demonstrate why the victim made the allegations or why she believed that abuse had occurred. He suggested that the behavior of the victim's mother, described in the affidavit of the defendant's niece, led to the allegations. The defendant's attorney also suggested, to this end, that "[t]he smoke of marijuana . . . may have affected [the victim's] brain or gotten to her head [and] may be part and parcel of why she has made such statements or why she believes something like this has occurred." The defendant's attorney argued that the defense had "no way" to answer to those questions "without some sort of psychological evaluation occurring . . . ."

In response, the prosecutor argued that the state neither intended to prove nor was required to prove that the victim had been "psychologically, morally or actu-

ally impaired" by the defendant. The prosecutor argued that the state needed to prove only that the defendant had contact with the intimate parts of the victim in an indecent manner likely to impair the victim's health or morals. The prosecutor argued that the state would introduce evidence that only an investigative interview of the victim, rather than a psychological examination of the victim, had occurred. The prosecutor also argued that the defendant had failed to challenge effectively the victim's competency to testify. He further argued that, to the extent that the defendant wanted to suggest that the victim's allegations of abuse were the result of her mother's drug use or sexual conduct while she was in the victim's presence, the defendant could elicit evidence to support such a theory of defense absent a psychological examination of the victim.

In an oral ruling, the court denied without prejudice the request to conduct a psychological examination of the victim. The court explained that the defendant had failed to call into question the victim's competency to testify. The court stated: "If the child witness or the mother takes the [witness] stand and [the] defense wants to renew his motion for an examination based upon the manner in which that witness testifies . . . I will hear that then." The court also explained that the defendant had not demonstrated that a psychological examination was warranted "for impeachment purposes" or that the allegations set forth in the affidavit of the defendant's niece warranted a psychological examination of the victim.

In his brief, the defendant argues that the affidavit of his niece "suggest[ed] that the victim . . . needed some kind of psychological examination." The defendant argues that a nexus exists between the information in the affidavit and "whether [the victim] could accurately perceive events at the time of the incidents of which she complained." The defendant posits that the

information in the affidavit "can be said to suggest that the victim may have experienced a diminished capacity to receive correct sense impressions at the time of the incident or to recollect and narrate facts intelligently." The defendant claims that he challenged the victim's competency, that an examination was necessary to evaluate the victim's competency and that the court did not make findings concerning the victim's competency. The defendant also claims that, by precluding the defendant from conducting the requested examination, the court "prevented [him] from pursuing a line of inquiry calculated to discredit [the victim]."

We first address the aspect of the defendant's claim that a psychological examination was necessary to aid the court in determining whether the victim was competent to testify. As a preliminary matter, we note that the victim, who was a child at the time of trial, was not presumed to be incompetent to testify concerning her allegation of sexual abuse. General Statutes § 54-86h; *State* v. *Sanchez*, 25 Conn. App. 21, 26, 592 A.2d 413 (1991). "The competency of a witness is a matter peculiarly within the discretion of the trial court and its ruling will be disturbed only in a clear case of abuse or some error in law. . . . [I]n determining the competency of a proposed witness the trial court should consider the capacity of the witness to receive correct sense impressions, to comprehend the facts to be developed, to recollect and narrate facts intelligently, and to appreciate the moral duty to tell the truth." (Citations omitted; internal quotation marks omitted.) *State* v. *Morant*, 242 Conn. 666, 677, 701 A.2d 1 (1997).

"Our case law demonstrates that the drastic measure of ordering a psychiatric examination . . . should be taken only upon compelling reasons. . . . Such an examination should not be ordered if the trial court, after hearing the testimony of the witness, has no doubt of [the witness'] mental soundness. . . . In making

such a determination, the trial court may make use of its own observations of the witness." (Citations omitted; internal quotation marks omitted.) Id., 679. The issue of whether to order a psychiatric examination of a witness to determine whether such witness is competent to testify is a matter left to the sound discretion of the trial court, and a ruling denying a motion for an examination will not be disturbed absent a showing that the court abused its discretion. See id., 681; *State v. Calderon*, 82 Conn. App. 315, 328, 844 A.2d 866, cert. denied, 270 Conn. 905, 853 A.2d 523, cert. denied, 543 U.S. 982, 125 S. Ct. 487, 160 L. Ed. 2d 361 (2004); *State v. Webb*, 75 Conn. App. 447, 464, 817 A.2d 122, cert. denied, 263 Conn. 919, 822 A.2d 244 (2003).[4]

Here, the defendant argued that his request for an examination was supported by the factual averments of his niece. We are unable to conclude, as a matter of law, that those averments constituted compelling reasons to order a psychological examination of the victim. Those averments were not of such a nature that they warranted the examination sought; they were made by a relative of the defendant and did not, on their own, indicate that the victim would not be able to understand the questions asked of her, to respond in a coherent manner or to recollect and relate accurately the events that were the subject of the trial. There is nothing in the record to indicate that the court abused its discretion by denying the motion without prejudice, thereby affording the defendant the opportunity to

[4] During argument on the motion, the defendant's attorney equated his motion for a psychological examination with a motion for a psychiatric examination. "Psychology" is defined as "the science of the mind or of mental states and processes." Random House Webster's Unabridged Dictionary (2d Ed. 2001). "Psychiatry" is defined as "the practice or science of diagnosing and treating mental disorders." Random House Webster's Unabridged Dictionary (2d Ed. 2001). For purposes of our analysis, we find our case law concerning motions for psychiatric examinations to be applicable to the defendant's motion for a psychological examination.

renew his motion after the court had the opportunity to observe the witness and to evaluate her ability to testify.[5]

We turn to the next aspect of the defendant's claim, which is that a psychological examination of the victim was necessary to protect his right to confront the victim because, as he posits, an examination might have enabled him to pursue a line of inquiry calculated to discredit the victim. "The defendant does have a right under the confrontation clause to expose to the jury the facts from which jurors, as the sole triers of [fact] and credibility, [can] appropriately draw inferences relating to the [reliability] of the [state's witness]. . . . The confrontation clause requires that [if] the testimony of such a witness is to remain in the case as a basis for conviction, the defendant must be afforded a reasonable opportunity to discover any infirmities that may cast serious doubt upon its truthfulness. . . .

"While the competency of a witness is for the trial court to evaluate, the credibility of a witness is for the jury to determine. . . . The trial court may, in its discretion, limit the cross-examination of a witness so long as the defendant's right to confrontation is not impaired. . . . This discretion includes matter[s] of discovery [concerning mental capacity] where material is sought for impeachment purposes. . . . We have held that the trial court has broad discretion in deciding whether to order the psychiatric examination of a witness for the purposes of impeachment. . . .

"Again, it has been emphasized that the discretion to condition a witness' testimony on the witness' submission to a psychiatric examination should be exercised sparingly. . . . [A trial court is] entitled to be leery of both psychiatric examinations of witnesses and psychi-

---

[5] The record reflects that the defendant did not renew his motion at a later time.

atric testimony about witnesses, because the jury can observe for itself . . . the witness's behavior. Criminal trials are complex enough without turning them into collateral investigations of the witnesses—investigations that would not only drag out trials and confuse jurors but also discourage people from serving as witnesses." (Citations omitted; internal quotation marks omitted.) *State* v. *Morant,* supra, 242 Conn. 682–83.

The defendant did not offer any evidence that the victim had a history of psychological problems. The defendant did not seek to examine the victim in an effort to challenge expert opinion or documentary evidence concerning the victim's psychological condition or mental capacity. The defendant's right to confrontation encompassed, among other things, the defendant's right to challenge the victim's ability to perceive events, to recall and to narrate facts and to testify truthfully. There is no unfettered right, however, to subject every witness to a psychological examination in search of infirmities. "A compelled psychiatric examination of a witness can be a tool of harassment . . . and the discretion to order an examination should be exercised sparingly." (Citations omitted; internal quotation marks omitted.) Id., 685.

The defendant's right to discover infirmities that could cast doubt on the victim's allegations and to cast doubt on the truthfulness of the victim's testimony was not implicated here because the defendant failed to make a proper showing of a nexus between the factual averments related to the victim's living environment with her mother and the victim's psychological well-being such that an examination was warranted.[6] See

---

[6] In denying the defendant's motion for a psychological examination, the court stated that the defendant could seek to introduce evidence related to the victim's living environment, as set forth in the affidavit, if he chose to during trial. The record reflects that the court subsequently granted the state's motion to preclude such evidence. The defendant does not challenge that evidentiary ruling on appeal.

*State* v. *Betances*, 265 Conn. 493, 508, 828 A.2d 1248 (2003); *State* v. *Nguyen*, 52 Conn. App. 85, 94, 726 A.2d 119 (1999), aff'd, 253 Conn. 639, 756 A.2d 833 (2000). On the basis of our review of the record before us, we are unable to conclude that the court abused its discretion by determining that such a showing had not been made. A defendant's right to present a defense does not include a right to present evidence that properly is excluded under the rules of evidence. *State* v. *West*, 274 Conn. 605, 624–25, 877 A.2d 787 (2005). Similarly, a defendant's right to confront an adverse witness does not include a right to compel such witness to submit to a psychological examination when the court, in a proper exercise of its discretion, deems such an examination unwarranted. Such is the case before us. Accordingly, we reject the defendant's claim that the court improperly refused to order an examination to provide material for impeachment purposes.

II

The defendant next claims that the court improperly failed to strike the testimony of one of the state's witnesses, E. We decline to review that claim.

E testified as follows: At the time of the incidents in question, E was seven years old and visited the victim and her mother regularly at the defendant's house. On one occasion, E was in the hot tub at the house with the defendant and the victim. The defendant "pulled" the victim by her waist and "put her on his lap." The victim stayed on the defendant's lap for approximately fifteen minutes. Three or four days later, the victim talked to E about what had occurred in the hot tub. The victim seemed upset and told E that the defendant "had put her on his lap."

The defendant, citing two reasons, claims that E's testimony was improperly admitted into evidence as constancy of accusation evidence. First, the defendant

claims that E did not testify that the victim complained of a sexual assault when she discussed the hot tub incident. Second, the defendant claims that E did not testify that the victim's complaint to E was related to the defendant.

The record reflects that the defendant did not, at any time, object to the admission of E's testimony. "Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 272 Conn. 515, 540, 864 A.2d 847 (2005). "The standard for the preservation of a claim of improperly admitted evidence at trial is well settled. Practice Book § 60-5 provides in relevant part that [this] court shall not be bound to consider a claim unless it was distinctly raised at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . Our rules of practice make it clear that counsel must object to a ruling of evidence [and] state the grounds upon which objection is made . . . to preserve the grounds for appeal. . . . These requirements are not simply formalities. . . . We consistently have stated that we will not consider evidentiary rulings where counsel did not properly preserve a claim of error by objection . . . ." (Internal quotation marks omitted.) *State* v. *Smith*, 91 Conn. App. 133, 137, 880 A.2d 959, cert. denied, 276 Conn. 917, 888 A.2d 86 (2005). We decline to review the defendant's unpreserved evidentiary claim.

III

The defendant next claims that the court improperly instructed the jury with regard to E's testimony and that it was probable that the instruction misled the jury. We disagree.

The relevant part of E's testimony is discussed in part II. During its charge, the court delivered the following instruction: "The complainant . . . testified here in court before you. You may use as evidence her testimony given in court as proof of the facts asserted in that testimony and give it the weight you find is reasonable. The state also offered evidence of out-of-court statements made by [the victim] to other persons that the defendant had inappropriate contact with her by way of contact with her parts or her being made to touch the intimate parts of the defendant, which I will address more fully later. Those persons to whom she made such out-of-court statements were in different circumstances her cousin, [E], her friend, [M], and a school social worker . . . . Each of these people testified as to the statements [the victim] made to them regarding the defendant having inappropriate contact with her.

"This evidence by each of these witnesses is admitted solely to corroborate or not to corroborate [the victim's] testimony in court. It is to be considered by you only in determining the weight and credibility you will accord [the victim's] testimony given here in court. This evidence of out-of-court statements by [the victim] of inappropriate contact by or with the defendant is not to be considered by you to prove the truth of the matter asserted in those out-of-court statements. In determining whether those out-of-court statements are corroborative or not corroborative of [the victim's] testimony in court, you should consider all the circumstances under which they were made and to whom, and whether the statements made to those persons were or were not consistent with her testimony here in court. . . .

"To the extent you find what [the victim] has said outside the courtroom is consistent with her testimony in court, [you] may find her testimony in court to be corroborated or supported. To the extent you find that

what she has said outside the courtroom is inconsistent with her testimony in court, you may consider the degree of inconsistency which you find. And you may consider the reasons you may find for the inconsistency in evaluating her testimony given here in court."

After the court delivered its jury charge, the defendant's attorney took exception to the foregoing instruction. The defendant's attorney argued that the court had mischaracterized E's testimony because E had not testified that the victim told E that any inappropriate touching had taken place, but only that the defendant was present in the hot tub with the victim. The court noted the defendant's exception and stated that it had instructed the jury that the jury's recollection of the evidence was controlling. The defendant now claims that the court "abused its prerogative of fair comment during its instruction on the constancy of accusation evidence" by suggesting that E had testified that the victim told E that the defendant had inappropriately touched the victim or had caused the victim to touch the defendant inappropriately in the hot tub.

"A trial court has broad discretion to comment on the evidence adduced in a criminal trial. . . . A trial court often has not only the right, but also the duty to comment on the evidence. . . . The purpose of marshaling the evidence, a more elaborate manner of judicial commentary, is to provide a fair summary of the evidence, and nothing more . . . ." (Internal quotation marks omitted.) *State* v. *Butler*, 81 Conn. App. 100, 108, 837 A.2d 896, cert. denied, 268 Conn. 902, 845 A.2d 405 (2004).

The defendant concedes that he does not present a constitutional claim of instructional error, as the claim is not related to an instruction concerning the elements of an offense, a burden of proof or the presumption of innocence. See *State* v. *LaBrec*, 270 Conn. 548, 557, 854

A.2d 1 (2004). The defendant also does not claim that the court delivered a legally insufficient instruction concerning constancy of accusation evidence or that the court violated his right to a fair trial by unfairly commenting on the evidence in a one-sided manner. In reviewing that nonconstitutional claim, we ask whether it is reasonably probable that the jury was misled by the court's instructions. See *State* v. *Hinds*, 86 Conn. App. 557, 568, 861 A.2d 1219 (2004), cert. denied, 273 Conn. 915, 871 A.2d 372 (2005). "[T]he charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 182, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

Here, the court mischaracterized E's testimony to the extent that it stated that E, like other constancy of accusation witnesses, had testified that the victim made statements to E regarding "inappropriate contact." E did not so testify, but testified that the victim had seemed upset and recalled that the defendant had pulled the victim onto his lap in the hot tub. After reviewing the charge as a whole, however, we conclude that no reasonable probability exists that the court's misstatement of the evidence misled the jury. First, the court referred to E's testimony only once in the context of summarizing the testimony of three constancy of accusation witnesses. Second, the court's characterization of E's testimony was not so misleading in and of itself in that E had testified that the victim was upset and

had told E that the defendant pulled the victim to him and placed her on his lap. In light of the other evidence adduced at trial, it certainly was not unreasonable for the finder of fact to infer that the victim was upset because the defendant had caused inappropriate contact to occur in the hot tub. Nonetheless, it was not the court's province to draw such an inference in its charge. Third, although the court misstated E's testimony in that regard, it accurately stated that two other constancy of accusation witnesses, M and a school social worker, testified that the victim had related to them that inappropriate touching by the defendant had occurred.

Finally, we must view the court's misstatement in the context of the entire charge. The court instructed the jury that it, and not the court, was the finder of fact. The court stated: "If the court has expressed or intimated any opinion as to the facts, you are not bound by that opinion. . . . If I refer to any of the evidence in this charge, and I may do so, it will be simply for the purposes of illustration and clarification. . . . If I omit reference to any evidence, you will supply it from your recollection. If I incorrectly state any of the evidence, you will correct my error because it is your province to review the evidence and determine the facts established by it." We have no basis on which to assume that the jury did not follow the court's instructions in that regard. On the record, we are unable to conclude that any prejudice resulted from the court's isolated misstatement in its instruction.

### IV

Finally, the defendant claims that the court improperly permitted the state to amend its information at the close of the state's case-in-chief. We decline to review that claim.

Prior to the start of the trial, the state filed a substitute information. The substitute information contained

three counts, each of which alleged the following: "[A]t [a named city in Connecticut], during the year 1997, the said RON J. SUN had contact with the intimate parts of a female child under the age of sixteen years in an indecent manner likely to impair the health or morals of such child, in violation of Section 53-21 . . . (2) of the Connecticut General Statutes."

At the close of the state's case-in-chief, the defendant's attorney moved for a judgment of acquittal. The defendant's attorney argued that, to the extent that the state alleged that abuse occurred in the defendant's hot tub, the information did not correspond to the evidence presented, namely, that the defendant caused the victim to have contact with his intimate parts. The defendant's attorney asked for a judgment of acquittal as to one of the counts on that ground. The defendant's attorney further argued, with regard to the other counts, that the state had not alleged specifically that the defendant had touched the victim between her legs. The defendant's attorney argued that the defendant had notice that the state intended to prove only that the defendant had touched the victim "under the shirt above the waist" and that this conduct was not sufficient to warrant a conviction.

The prosecutor represented that the state had provided the defense with "a full copy" of its file, which contained information about the hot tub incident as well as the other incidents of abuse for which the state presented evidence during its case-in-chief. The prosecutor also represented that she had spoken with the defendant's attorney on the telephone prior to the start of the trial and that she had discussed the factual basis for each of the three counts of the substitute information.[7] The prosecutor also suggested that the defen-

[7] The defendant's attorney expressly agreed with the prosecutor's representation that the state's case file did contain information concerning the state's allegation that the defendant caused the victim to have contact with his intimate parts in the hot tub. In fact, the defendant's attorney did not

dant's cross-examination demonstrated that the defense was aware of the factual allegations surrounding the hot tub incident.[8]

The prosecutor then asked the court for permission to amend its substitute information to reflect that, with regard to one of the three counts, the defendant subjected the victim to contact with his intimate parts and that this occurred in or about 1997, rather than during 1997. The court denied the defendant's motion for a judgment of acquittal and granted the state's motion for leave to amend its substitute information. The court permitted the state to amend the information and to allege, in the third count, that the defendant caused the victim to have intimate contact with the defendant's intimate parts in or about 1997. With regard to the other two counts, the court permitted the state to allege with more specificity the conduct that was at issue with regard to those counts.

The court stated that the amendments sought did not bring any new or different charges into the case. With regard to the count related to the hot tub incident, the court also stated that it did not perceive any prejudice to the defendant by permitting the amendment because, on the basis of the representations of counsel, both parties understood prior to trial that the hot tub incident was the basis for one of the three counts in the substitute information and that the hot tub incident concerned no criminal conduct other than the defendant's having subjected the victim to contact with his intimate parts. The court further noted that the defendant thoroughly had cross-examined the victim and other witnesses regarding the hot tub incident.

Additionally, the court found that the state had demonstrated good cause for the amendment as to the hot

---

take issue with any of the prosecutor's representations concerning either what had been disclosed or discussed about the case prior to trial.

[8] The record reflects that the defendant did not request a bill of particulars.

tub incident because the state had demonstrated that its inaccuracy was the result of an oversight that occurred when the state eliminated a count from a prior information before trial that charged the defendant with sexual assault in the first degree. The court also noted that it considered the state's interest in having the allegation that criminal conduct occurred in the hot tub brought before the jury. Thereafter, the state filed an amended information that conformed to the evidence presented at trial.

The defendant sets forth a vague and poorly briefed challenge to the court's ruling. The defendant argues that the court improperly permitted the state to amend its information because he had "inadequate notice of the charges" and "no reasonable opportunity to mount a defense" with regard to the charges set forth in the amended information. The defendant, citing to the sixth amendment of the United States constitution and article first, § 8, of the Connecticut constitution,[9] argues that his right to be apprised of the nature of the charges against him was violated in this case.

The defendant did not assert a constitutional claim at trial. The defendant's attorney filed a motion for a judgment of acquittal and, in arguing the motion, referred to what he deemed to be deficiencies in the information. That led to the prosecutor's request to file an amended information. The defendant did not object either to the state's request or the court's ruling on the request.

The defendant raises his claim for the first time on appeal. "When a party raises a claim for the first time

---

[9] Even were we to address the claim, we would not address it to the extent that the defendant alleges a violation of rights afforded him by the state constitution because he did not analyze that aspect of his claim separately and distinctly. See *State* v. *Joyce*, 243 Conn. 282, 288 n.6, 705 A.2d 181 (1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998).

on appeal, our review of the claim is limited to review under either the plain error doctrine as provided by Practice Book § 60-5, or the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)." *State* v. *Rodriguez*, 68 Conn. App. 303, 308, 791 A.2d 621, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002). The defendant has not sought review of his claim under either of those doctrines. Under the circumstances of this case, it is not appropriate to engage in a level of review that the defendant has not requested. See id. Accordingly, we decline to review the claim.

The judgment is affirmed.

In this opinion the other judges concurred.