STATE OF CONNECTICUT *v.* HOWARD W. COSBY
(AC 25770)

Gruendel, Rogers and Mihalakos, Js.

Argued September 14, 2006—officially released January 16, 2007

*Francis L. O'Reilly*, special public defender, for the appellant (defendant).

*Joan K. Willin*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Margaret E. Kelley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Howard W. Cosby, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).[1] On appeal,

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . . "

the defendant claims that the trial court improperly (1) instructed the jury on consciousness of guilt, (2) allowed certain constancy of accusation testimony and (3) denied his motion for a judgment of acquittal because the evidence was insufficient to support his conviction of sexual assault in the first degree. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On July 26, 2002, the victim, T,[2] a sixteen year old female, was living with her mother, M, and her brother in Bridgeport. There were four bedrooms in the house, two on the first level and two on the second level. The defendant, who was twenty-three years old, had a relationship with M, who was in her forties. They had been dating for approximately two weeks.

At around 5 p.m. on July 26, 2002, T returned home from work. M and the defendant were both there. Shortly after T's arrival, M left the house for about forty minutes to attend to some errands. T proceeded to take a shower and was dressing in her brother's bedroom when the defendant entered the room with a bottle of wine in his hand. After they engaged in conversation for several minutes, the defendant touched T's leg and upper thigh. T left the room and went downstairs to M's bedroom where she was followed by the defendant. The defendant then told T to sit on his lap. She refused to do so and told the defendant, "No." He then grabbed her and pulled her down on his lap. The defendant started talking to her in a sexual manner, telling her that he wanted to "get with her." She said no and expressed to him that his conduct was wrong because

---

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e. We therefore refer to the victim of the sexual assault as T and to the victim's mother as M.

he was dating her mother. The defendant then proceeded to pull T's pants down. She attempted to stop him, but he pulled her pants down again, penetrated her vagina and continually told her, "let me finish," because he was about to ejaculate. In T's words, he took out his "genitals" and entered her despite her protestations.

At the time of the incident, T was five feet, one inch tall and weighed approximately 115 pounds. The defendant was significantly larger than T and weighed approximately 275 pounds. The defendant, after sexually entering T twice, finally stopped and noticed that M and T's aunt had returned. He warned T to act normal and not to mention what had happened.

T had planned to go to a friend's house. The defendant drove T to her friend's house, where T told her friend what had occurred. Two days after the incident, T told her cousin and, finally, on July 29, 2002, she told her mother. Her mother immediately called the police, who arrived at her home and took a statement. M subsequently drove T to the police department, where T repeated her story to a detective. Police were not able to locate the defendant, and it was not until August 5, 2003, that he was located in Rhode Island where he was arrested.

After a trial, the jury found the defendant guilty of the crime of sexual assault in the first degree in violation of § 53a-70 (a) (1). The court sentenced the defendant to twenty years incarceration, execution suspended after fifteen years, with fifteen years of probation and lifetime sex offender registration. This appeal followed.

I

The defendant first claims that the court improperly gave a jury instruction on flight as consciousness of

guilt.[3] Although the defendant recognizes that whether such an instruction should be given is left to the sound discretion of the court; *State* v. *Luster*, 279 Conn. 414, 420–21, 902 A.2d 636 (2006); he maintains that the court abused its discretion by giving a consciousness of guilt instruction because there was no evidentiary basis to support an inference that he had left the state to avoid prosecution. Specifically, the defendant argues that there was testimony that provided other possible reasons to explain his presence in Rhode Island at the time of his arrest. We are not persuaded.

"[T]he propriety of an instruction regarding consciousness of guilt based upon flight goes to the question of the defendant's state of mind. In other words, when a defendant has left the state following a crime, the question is: why did he do so? This requires an assessment by the fact finder of the defendant's motivations or reasons for leaving the state. If there is a reasonable view of the evidence that would support an inference that he did so because he was guilty of the crime and wanted to evade apprehension—even for a short period of time—then the trial court is within its discretion in giving such an instruction because the fact finder would be warranted in drawing that inference." *State* v. *Scott*, 270 Conn. 92, 105–106, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005).

The following additional facts are necessary for the determination of the defendant's claim. Three witnesses testified that on July 29, 2002, the defendant was waiting for M in her car in front of M's house. This was the moment when T told M what the defendant had done. A loud verbal exchange occurred in the house. The defendant immediately disappeared, leaving his

---

[3] The defendant contends: "There is nothing about [his] actions after the alleged incident took place that demonstrates flight."

"shower shoes" in the front yard. One hour later, the defendant called M at her home and told her that he "didn't mean for it to happen" and that he had been drinking. A detective with the Federal Bureau of Investigation's violent crimes fugitive task force testified that he was unsuccessful in locating the defendant in Connecticut but found the defendant in Rhode Island more than one year later on August 5, 2003.

To prevail on his claim that the court improperly charged the jury on flight, the defendant must prove that the court abused its discretion. Id., 104. The court's instructions to the jury provided in relevant part: "The flight of a person accused of a crime is a circumstance, which, when considered together with all the facts of the case, may justify a finding of the defendant's guilt. . . . If you find that the defendant was fleeing from this charge, you may consider it as evidence of his consciousness of guilt. . . . It is up to you . . . to decide whether certain acts, statements or conduct of the defendant reflects consciousness of guilt . . . . "

"[E]vidence of flight from the scene of a crime inherently is ambiguous. . . . That ambiguity does not render a flight instruction improper." (Citations omitted.) *State* v. *Luster*, supra, 279 Conn. 423. The jury was not required to credit the defendant's contention that the reason he left Connecticut was not to evade apprehension, but rather, because his relationship with M had ended. Although that might be a reasonable, innocent explanation for his conduct in leaving the state when he did, that was not the only reasonable explanation. We cannot say that the court abused its discretion in giving this particular charge to the jury. When read as a whole, the overall charge was correct in law and provided the jury with sufficient guidance to apply the facts to the law properly. The jury was free to draw any reasonable inferences from the testimony presented. We conclude, therefore, that the court did not

improperly instruct the jury on flight as consciousness of guilt.

## II

The defendant next claims that the court improperly permitted constancy of accusation testimony from T's cousin. Specifically, the defendant argues that certain portions of the cousin's testimony were beyond the scope permitted by the rule of *State* v. *Troupe*, 237 Conn. 284, 304, 677 A.2d 917 (1996) (en banc).[4] Because the defendant's evidentiary claim consists of several challenges to certain portions of the cousin's testimony, we will address each challenge in turn.

At trial, T testified that two days after the assault, she told her cousin that the defendant had sexually assaulted her. T's cousin and several other witnesses testified that T told them that she had been assaulted sexually by the defendant. The state then proceeded to ask T's cousin if T had given him any other details about what happened. T's cousin replied, "[l]ater on down the road, yeah." The defendant made no objection to this testimony at trial. The defendant, however, takes issue with this testimony on appeal.

"Practice Book § 60-5 provides in relevant part that [this] court shall not be bound to consider a claim unless it was distinctly raised at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . Our rules of practice make it clear that counsel must object to a ruling of evidence [and] state the grounds upon which objection is made

---

[4] See *State* v. *Troupe*, supra, 237 Conn. 304 ("a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator").

. . . to preserve the grounds for appeal. . . . These requirements are not simply formalities. . . . We consistently have stated that we will not consider evidentiary rulings where counsel did not properly preserve a claim of error by objection . . . ." (Internal quotation marks omitted.) *State* v. *Sun*, 92 Conn. App. 618, 630, 886 A.2d 1227 (2005).

The record reflects that the defendant did not object to the testimony with which he now takes issue on appeal. "Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) Id. For these reasons, we decline to review this unpreserved evidentiary claim.[5]

The defendant raises one final evidentiary claim. At one point during the trial, the state asked T's cousin: "You indicated that you had to force something out of her. The question . . . is, what did you say to [T]?" The defendant objected to this line of questioning. After the court overruled the objection, T's cousin testified: "I asked her what was the matter with her." The defendant challenges this testimony on appeal as being "extremely prejudicial" and argues that it undermines the principles set forth in *Troupe*. We do not agree.

We begin by setting forth the applicable standard of review. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there

---

[5] The state then asked T's cousin what he did after T told him of the assault. He replied: "I rushed . . . well, I called . . . somebody else to come pick me up." This exchange elicited an objection from the defendant as going beyond the scope of *Troupe*. Although the court overruled the objection, the defendant does not challenge this portion of the cousin's testimony on appeal, so we will not address it here.

was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Powell*, 93 Conn. App. 592, 599, 889 A.2d 885, cert. denied, 277 Conn. 924, 895 A.2d 797 (2006).

Upon review of the record, we conclude that there is no reasonable likelihood that the challenged testimony had any material bearing on the jury's finding that the defendant had committed the sexual assault against T as alleged by the state. First, the cousin's testimony on this issue consists of only one sentence. Moreover, the court, in accordance with *Troupe*, expressly apprised the jury that it was to consider the constancy of accusation testimony solely to corroborate T's testimony and not as substantive evidence establishing the defendant's guilt.

Finally, it does not appear that the testimony the state elicited from T's cousin violated the guidelines enunciated in *Troupe*. Under *Troupe*, "any testimony by the witness regarding the *details surrounding the assault* must be strictly limited to those necessary to associate the victim's complaint with the pending charge . . . ." (Emphasis added.) *State* v. *Troupe*, supra, 237 Conn. 304. At this particular juncture, the state was inquiring only as to *the cousin's* conduct. The state did not ask T's cousin to provide any details that T may have given him regarding the *defendant's* alleged conduct. Because T's cousin did not testify regarding any details surrounding the assault, *Troupe* is inapplicable to this portion of his testimony. As the court explained at the trial, "[the state] is not precluded from asking questions that are outside of the parameters of *Troupe*. And what [T's cousin] said is certainly something he can testify to because he has personal knowledge as to what he said." On the basis of the foregoing analysis, the defendant's second claim fails.

## III

The defendant's final claim is that the court improperly denied his motion for a judgment of acquittal. Specifically, the defendant claims that the state presented insufficient evidence, as a matter of law, to support the jury's finding of guilt beyond a reasonable doubt as to the crime of sexual assault in the first degree.

As the defendant's motion was in the nature of an insufficiency of the evidence claim, we will apply that standard of review to his claim as set forth by our Supreme Court. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Citations omitted; internal quotation marks omitted.)

*State* v. *Perkins*, 271 Conn. 218, 246–47, 856 A.2d 917 (2004).

The defendant first argues that the state failed to prove that his penis penetrated T's vagina. There was testimonial evidence in the record, however, that proved penetration. T testified: "And he still had me by my waist and he was pulling out his genitals and . . . I was pushing . . . to like push up to *get it out of me.* And I did get *it* out one time and then I tried to pull my pants back up, but he got my pants back down and that's when he told me that he was about to [ejaculate]." (Emphasis added.) Later on during the trial, the state asked T, "How do you know that he entered you," to which T responded, "Because I felt *it.* I felt *it.*" (Emphasis added.) Finally, T testified: "And I did *get him out of me.* Not basically off of me, but I did *get him out of me*, and I tried to tug my pants back up, but . . . he just bent me back over." (Emphasis added.) On the basis of T's testimony, which included her repeated references to "it," and to her continual attempts to "get him out of [her]," the jury reasonably could have inferred not only that the defendant actually penetrated T's vagina, but that this happened more than once.

The defendant next argues that the state failed to prove that he used force to compel T to have sexual intercourse. Pursuant to General Statutes § 53a-65 (7) (B), the term "use of force," in this context, means "use of actual physical force or violence or *superior physical strength* against the victim." (Emphasis added.) The record reveals that the defendant weighed more than twice as much as T in that at the time of the incident, he was approximately 275 pounds while T weighed a mere 115 pounds at best. From T's testimony, it is also clear that the defendant used his superior physical strength against her. On several occasions, T testified that the defendant grabbed her by her waist from behind and pulled her down on his lap. T further testified that

he tugged at her pants to get them down and that despite her protestations, he bent her over the bed so that her back was toward him and then penetrated her vagina. T also testified that at one point, she managed to get free, albeit temporarily: "And I did get him out of me. Not basically off of me, but I did get him out of me, and I tried to tug my pants back up, but . . . he just bent me back over." From this testimony, the jury reasonably could have inferred that the defendant penetrated T and that when she succeeded in getting his penis out of her, he used force and his superior physical strength to push her back over the bed so that he could penetrate her again.

It is evident from the verdict that the jury believed all or part of T's testimony, which was more than sufficient for a finding of guilty. On the basis of our review of the record and the reasonable inferences that could be drawn therefrom, we conclude that the jury reasonably could have found that the cumulative effect of the evidence justified the verdict of guilty beyond a reasonable doubt as to the crime of sexual assault in the first degree.

The judgment is affirmed.

In this opinion the other judges concurred.