STATE OF CONNECTICUT *v.* SEAN N. YOUNGS
(AC 25984)

Bishop, Lavine and Pellegrino, Js.

Argued March 30—officially released September 5, 2006

*Elio C. Morgan*, special public defender, for the appellant (defendant).

*Jessica Probolus*, special deputy assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, and *Stephen M. Carney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Sean N. Youngs, appeals from the judgment of conviction, rendered after a jury trial, of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a) and criminal violation of a protective order in violation of General Statutes § 53a-223. On appeal, the defendant claims that (1) the trial court improperly denied his motion for a judgment of acquittal in which he claimed that the evidence was insufficient to support the jury's verdict of guilty on the charge of unlawful restraint in the first degree, (2) the jury charge was improper, (3) the court improperly denied his motion for a continuance and (4) prosecutorial misconduct deprived him of a fair trial. We reject the defendant's claims and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim, Felicia Williams, were involved in a tumultuous romantic relationship that spanned a twelve year period and included several alleged incidents of domestic violence. As a result of the escalating acrimony between the couple, protective orders were issued at different times to both the defendant and Williams prior to the September 3, 2003 incident that led to the defendant's arrest. Following a

violent argument with the defendant, Williams was granted a protective order on May 21, 2003, that was in effect at the time of the incident. That protective order prevented the defendant from imposing any restraint on Williams and from threatening, harassing, assaulting, molesting or sexually assaulting Williams or entering her home. The order did not require that the defendant refrain from contacting Williams, but they did not continue to be involved romantically after its issuance.

During the early morning hours of September 3, 2003, Williams was waiting outside her place of employment, Hillcrest Nursing Home (Hillcrest) in Montville, for a ride home from her boyfriend, Gary Schilley. Williams had been employed at Hillcrest since August 18, 2003. The defendant, who ended his employment at Hillcrest on August 17, 2003, drove to Hillcrest in his car, got out and approached Williams, who was sitting on a bench. After professing his love for Williams, the defendant threatened her and instructed her to "get in the car." When Williams refused to get into the defendant's car voluntarily, the defendant dragged her into his vehicle as she protested both verbally and physically. Williams attempted to wrestle herself away from the defendant, but she was overpowered. Once in the vehicle, the defendant used the automatic door locks to prevent Williams from exiting.

Hillcrest employee Gertrude Klioze was walking into the building and observed the defendant dragging Williams into his car. Klioze promptly notified her supervisor, who called the police. Williams noticed Klioze and told the defendant that the police would be called. The defendant drove away with Williams in his vehicle, avoiding the main roads. While driving, the defendant told Williams that he wanted to take her to his new apartment. When Williams told the defendant that she did not want to go to his apartment, he threatened to

kill her boyfriend. Williams noticed that the defendant had a "crazy look in his eye." Concerned for her safety, Williams agreed to go to the defendant's apartment if he would first allow her to stop at her home to change her clothes. The defendant agreed to take Williams home. When the defendant and Williams reached her home, the defendant let Williams get out of his car. Williams went into her house and contacted the police.

The defendant was arrested and charged in a substitute information with unlawful restraint in the first degree in violation of § 53a-95 (a) and criminal violation of a protective order in violation of § 53a-223 for the incident that occurred on September 3, 2003. The defendant also was charged with assault in the third degree in violation of General Statutes § 53a-61, interfering with an officer in violation of General Statutes § 53a-167a and criminal violation of a protective order in violation of § 53a-223 for separate incidents that occurred prior to September 3, 2003.[1] After the state presented its case, the defendant moved for a judgment of acquittal on all charges, which was denied. The jury found the defendant guilty of unlawful restraint in the first degree and criminal violation of a protective order for the September 3, 2003 incident. He was acquitted of the remaining charges. The defendant was sentenced to an effective term of incarceration of five years, execution suspended after two years, followed by three years probation. This appeal followed.

I

The defendant first claims that the court improperly denied his motion for a judgment of acquittal, which he filed on the ground that the evidence was insufficient to support the jury's verdict of guilty on the charge of

---

[1] The state filed a motion to consolidate the charges against the defendant arising out of separate incidents occurring on May 20, August 7 and September 3, 2003, which was granted by the court.

unlawful restraint in the first degree. Specifically, the defendant argues that the state failed to prove beyond a reasonable doubt that he intended to restrain "another person under circumstances which expose[d] such other person to a substantial risk of physical injury." General Statutes § 53a-95 (a). We disagree.

At the outset, we set forth the applicable standard of review. "In reviewing [a] sufficiency [of evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a

reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Williams*, 93 Conn. App. 844, 852–53, 890 A.2d 630 (2006).

Pursuant to § 53a-95 (a), "[a] person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury." As applicable to § 53a-95 (a), "[p]ersons are restrained when their movements are intentionally restricted so as to substantially to interfere with their liberty, either (1) by moving them from one place to another, or (2) by confining them either to the place where the restriction commences or to the place where they have been moved without their consent. General Statutes § 53a-91 (1)." (Internal quotation marks omitted.) *State* v. *Luster*, 48 Conn. App. 872, 880, 713 A.2d 277, cert. denied, 246 Conn. 901, 717 A.2d 239 (1998).

In support of his claim, the defendant argues that the evidence submitted was inadequate to show that he intended to restrain Williams under circumstances that exposed her to a risk of substantial physical injury and that other scenarios are equally or more plausible. Specifically, the defendant offers as alternate theories to explain his actions the claim that he was in love with Williams and wanted to convince her of his affections or, alternatively, that he wanted to avoid having Williams create a conflict at Hillcrest.

Our resolution of the defendant's claim requires only brief discussion. The defendant's claim relies largely on his testimony, which conflicted with that of Williams. The jury, however, was free to believe or to disbelieve the testimony presented. See *State* v. *Vassell*, 79 Conn. App. 843, 845, 832 A.2d 99 (2003). The state produced

adequate evidence to satisfy the statutory elements of unlawful restraint in the first degree. See General Statutes § 53a-95 (a). The jury reasonably could have found, on the basis of the evidence presented, that the defendant intended to restrain Williams, irrespective of his claimed motive. The law is clear that the question of intent is purely a question of fact and that intent may be inferred from all the surrounding circumstances. See *State* v. *Porter*, 76 Conn. App. 477, 487–88, 819 A.2d 909, cert. denied, 264 Conn. 910, 826 A.2d 81 (2003). The defendant confronted Williams at her place of employment, dragged her unwillingly into his car, and prevented her from leaving his vehicle by controlling the power door locks and using physical force and threatening language. In addition, the evidence also justified the conclusion that the defendant subjected the victim to a substantial risk of physical injury. We are mindful that "[t]o convict a defendant of unlawful restraint in the first degree, no actual physical harm must be demonstrated; the state need only prove that the defendant exposed the victim to a substantial risk of physical injury." *State* v. *Jordan,* 64 Conn. App. 143, 148, 781 A.2d 310 (2001). The evidence of the defendant's assault on Williams when he dragged her into his car was more than sufficient to support a factual determination that by his behavior, the defendant exposed the victim to a substantial risk of physical injury. We conclude, therefore, that the jury reasonably could have found that the defendant was guilty of unlawful restraint in the first degree.

II

The defendant next claims that the court improperly instructed the jury on the charge of unlawful restraint in the first degree and failed to comment on the evidence during its charge and, therefore, deprived him of his right to a fair trial. Specifically, the defendant argues that the court did not properly (1) instruct the jury on

specific intent as an essential element of the crime, (2) instruct the jury that the specific intent element applies to both elements of § 53a-95 (a), and (3) comment on the evidence as it related to the individual charges that arose from three separate incidents. See footnote 1.

Although the defendant did not object at trial to the court's instruction, he seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[2] and the plain error doctrine. Practice Book § 60-5. We will review the defendant's claim because the record is adequate for review and the claim involves a fundamental right to due process. See *State* v. *Delgado*, 50 Conn. App. 159, 170, 718 A.2d 437 (1998); *State* v. *Walker*, 33 Conn. App. 763, 769, 638 A.2d 1084, cert. denied, 229 Conn. 913, 642 A.2d 1209 (1994). We conclude, however, that the defendant was not deprived of his right to a fair trial.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals

---

[2] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Erhardt*, 90 Conn. App. 853, 870–71, 879 A.2d 561, cert. denied, 276 Conn. 906, 884 A.2d 1028 (2005). We will address each of the defendant's claims regarding the court's instruction to the jury in turn.

## A

The defendant's first claim of instructional error is that the court failed to charge the jury properly on the specific intent element of unlawful restraint in the first degree. Although we conclude that the court's instruction as to the specific intent element with regard to unlawful restraint was inadequate, in examining the charge as a whole, we conclude that the defect was harmless.

The following additional facts are relevant to our resolution of the defendant's claim. The court gave the jury a lengthy charge on five separate counts, which included the following instruction addressing unlawful restraint in the first degree: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which exposed such other person to a substantial risk of physical injury.

"In order for you to find the defendant guilty of unlawful restraint in the first degree, you must unanimously find that the state had proven beyond a reasonable doubt two essential elements. The two essential elements are, first, that the defendant restrained Felicia Williams and, second, that the restraint of Felicia Williams was under circumstances which exposed Felicia Williams to a substantial risk of physical injury.

"The first element which the state must prove beyond a reasonable doubt is that the defendant restrained another person, Felicia Williams. Restraint means to

restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with her liberty by moving her from one place to another or by confining her either in the place where the restriction commences or in a place to which she has been moved without her consent." Following that portion of the instruction, the court then instructed the jury that "[a] person acts intentionally with respect to a result when his conscious objective is to cause such results. *I refer you to my previous instructions regarding intent and tell you to apply those instructions to this count of the information.*" (Emphasis added.)

The court's charge included instructions on five different counts. Prior to giving its instruction on unlawful restraint in the first degree, the court gave instructions on assault in the third degree[3] and interfering with an officer,[4] which both included instructions addressing the element of specific intent, although the precise words "specific intent" were not used. Following those instructions, but prior to giving its instruction on unlawful restraint in the first degree, the court gave an instruction on criminal violation of a protective order, which

---

[3] The court gave the following instruction for assault in the third degree: "The first essential element is intent. The state must first prove beyond a reasonable doubt that this defendant intended to cause physical injury to Felicia Williams. What the defendant intended is a question of fact for you to determine. Intent relates to the condition of mind of the person who commits the act, his purpose in doing it, as defined by our statute. A person acts intentionally with respect to a result when his conscious objective is to cause such result. What a person's purpose, intention or knowledge has been is usually a matter to be determined by inference."

[4] The court's instruction on interfering with an officer included the following: "Again, intent relates to the condition of mind of the person who commits the act, his purpose in doing it. It is defined in our statute; a person acts intentionally with respect to a result when his conscious objective is to cause such result. What a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. No person is able to testify that he looked into another person's mind and saw therein a certain purpose or intention or a certain knowledge."

included the element of general intent.[5] After delibera-
tions began, the jury requested that the court again
provide instruction on unlawful restraint in the first
degree. The court repeated the exact instruction it had
given previously for unlawful restraint in the first
degree, including reference to its previous instructions
concerning the element of intent. The defendant did
not take an exception to the court's charge or request
a curative instruction.

The defendant claims that the court's charge was
improper both because it failed to use the traditional
nomenclature of specific intent and because it referred
the jury to its previous instructions concerning the ele-
ment of intent without making it clear that there is a
specific intent element to unlawful restraint in the first
degree. We acknowledge that "[w]hile the instructions
need not be exhaustive, perfect or technically accurate,
they must be correct in law, adapted to the issues and
sufficient for the guidance of the jury." (Internal quota-
tion marks omitted.) *State* v. *Stevenson*, 53 Conn. App.
551, 573, 733 A.2d 253, cert. denied, 250 Conn. 917, 734
A.2d 990 (1999). The court's failure in the challenged
portion of the charge to use the words "specific intent,"
therefore, does not render the charge defective. The
court's reference to its previous instruction, without
indicating whether it was referring the jury to its instruc-
tions on the element of specific intent or general intent,
however, is more problematic.

When the court gave its instruction on unlawful
restraint in the first degree, it made the following refer-
ence: "I refer you to my previous instructions regarding

[5] The court's instruction on criminal violation of a protective order
included the following: "[G]eneral intent requires that the state prove beyond
a reasonable doubt that the defendant intended to perform the conduct that
constituted a violation of the protective order. The state does not have to
prove that the defendant had the specific intent to cause the precise harm
or precise results which resulted from his acts. General intent requires only
that the defendant took deliberate, conscious or purposeful action."

intent and tell you to apply those instructions to this count of the information." The court had given instructions on the element of specific intent in regard to its instructions previously when addressing the crimes of assault in the third degree and interfering with an officer. Those instructions, however, were immediately followed by the court's instruction on criminal violation of a protective order, which included instruction on the element of general intent. We conclude that referring the jury to the court's previous instructions regarding intent, without specifically stating whether the jury should consult the earlier charge on specific as opposed to general intent, was an improper instruction on unlawful restraint in the first degree because of its potential to confuse the jury. This conclusion, however, does not end our inquiry, because we must next consider whether the improper instruction warrants reversal of the judgment and a new trial. This consideration requires application of the harmless error doctrine.

An impropriety in the court's jury instruction as to an element of a crime has constitutional implications. See *State* v. *Hinton*, 227 Conn. 301, 308, 630 A.2d 593 (1993); see also *State* v. *Padua*, 273 Conn. 138, 166, 869 A.2d 192 (2005).

"If an improper jury instruction is of constitutional magnitude, the burden is on the state to prove harmlessness beyond a reasonable doubt. . . . An alleged defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. . . . In performing harmless error analysis, we keep in mind that [i]n determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in

guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . .

"When a jury is misinstructed on an essential element of a crime and a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed. . . . Further, a jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Padua*, supra, 273 Conn. 166–67.

The essential elements for the crime of unlawful restraint in the first degree, discussed previously, are set forth in the relevant statutes. See General Statutes §§ 53a-95 (a) and 53a-5.

The court's reference to its previous instructions on the element of intent within the same charge was a misinstruction, not an omission. Further analysis of this claim, therefore, requires us to examine whether the "record developed at trial establishes guilt beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *State* v. *Padua*, supra, 273 Conn. 166. Having reviewed the record, we conclude that the state had established the defendant's guilt beyond a reasonable doubt. The evidence produced at trial permitted the jury to conclude that the defendant confronted Williams at her place of employment, dragged her unwillingly into his vehicle, and prevented her from leaving his vehicle by controlling the power door locks and using

physical force and threatening language. We are satisfied of the defendant's guilt beyond a reasonable doubt and that the interest in fairness has been satisfied and the judgment should be affirmed. See id., 167. Accordingly, we conclude that the improper jury instruction was harmless beyond a reasonable doubt.[6] We also conclude that because the defendant suffered no manifest injustice, the claim does not warrant plain error review. See *State* v. *Boles*, 223 Conn. 535, 543, 613 A.2d 770 (1992).[7]

B

The defendant relies on General Statutes § 53a-5[8] to support his claim that the court improperly instructed the jury on unlawful restraint in the first degree by failing to specify that specific intent applies to both elements of § 53a-95 (a), including the second element, which is that the restraint occurs under "circumstances

---

[6] We note that had we treated the court's improper instruction as an omission rather than a misinstruction, our analysis would have resulted in the same conclusion. See *State* v. *Padua*, supra, 273 Conn. 167.

[7] "The plain error doctrine is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 239–40, 881 A.2d 160 (2005).

[8] General Statutes § 53a-5 provides: "When the commission of an offense defined in this title, or some element of an offense, requires a particular mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms 'intentionally', 'knowingly', 'recklessly' or 'criminal negligence', or by use of terms, such as 'with intent to defraud' and 'knowing it to be false', describing a specific kind of intent or knowledge. When one and only one of such terms appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears."

which expose . . . [another] person to a substantial risk of physical injury." By virtue of the definition of restraint as set forth in § 53a-91, unlawful restraint in the first degree requires that a person have the specific intent to restrain the victim. *State* v. *Phu Dinh Le*, 17 Conn. App. 339, 343, 552 A.2d 448 (1989). The defendant claims that specific intent is to be presumed to apply to the second element because it is the only such term that is set forth in § 53a-95 (a). We are not persuaded.

To address the defendant's claim, we must consider whether § 53a-95 (a) contains an implied requirement that the defendant have the specific intent to expose the victim to a substantial risk of injury. See *State* v. *Higgins*, 265 Conn. 35, 43, 826 A.2d 1126 (2003). This claim involves a question of statutory interpretation, over which our review is plenary. See *State* v. *Sostre*, 261 Conn. 111, 120, 802 A.2d 754 (2002). "Whether [a culpable mental state] is or is not to be implied in the definition of a statutory crime, where it is not expressed, [it] must be determined from the general scope of the [statute], and from the nature of the evils to be avoided." (Internal quotation marks omitted.) *State* v. *Higgins*, supra, 43.

We begin our analysis with the language of the relevant statute. When read together, the plain language of § 53a-95, defining the crime of unlawful restraint in the first degree, and § 53a-91 (1), defining "restrain," requires the state to prove that the defendant intentionally restrained the victim. Section 53a-95 does not contain any language requiring the state to prove that the defendant had the specific intent to expose the victim to a substantial risk of physical injury. The defendant relies on § 53a-5 to support his argument that specific intent applies to both elements of § 53a-95 because it is the only such term included in the statute. See General Statutes § 53a-5. Relying on the Penal Code comments of the commission to revise the criminal statutes; see

Connecticut General Statutes Annotated § 53a-5 (West 2001); our Supreme Court has stated, however, that § 53a-5 "does not . . . change the prior case law that omission of language of mental culpability is not conclusive, and whether a mental state is required is a question of statutory construction, depending on the general scope of the [statute] and the nature of the evils to be avoided." (Internal quotation marks omitted.) *State* v. *Higgins*, supra, 265 Conn. 43–44 n.11. We note, as well, that the presumption created in the last sentence of § 53a-5 applies "unless an intent to limit its application clearly appears." General Statutes § 53a-5.

In order to resolve this issue, we refer to the general scope of the statute and the nature of the evils to be avoided. *State* v. *Higgins*, supra, 265 Conn. 43–44 n.11. The crime of kidnapping and related offenses, which include unlawful restraint in the first degree, are codified in General Statutes §§ 53a-91 through 53a-99. The legislative intent is apparent from the plain language of those sections. The term "restrain" as used in § 53a-95 is defined in § 53a-91 (1) to mean "to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . ." General Statutes § 53a-91 (1). Section 53a-91 (1) does not state that specific intent to expose the victim to a substantial risk of physical injury is required.[9] Moreover, the commission comment to § 53a-95 clearly suggests the contrary. As stated in the commission comment to § 53a-95, "[t]he offense of unlawful restraint (which involves a restraining as opposed to an

---

[9] Although the defendant does not assert the claim that knowledge of those circumstances as defined in the statute is necessary, his argument poses similar concerns. We note that the resolution of that issue would require the same analysis. *State* v. *Higgins*, supra, 265 Conn. 43–44 n.11.

abduction) is divided into two degrees. The aggravating factor raising it to first degree *is the presence of circumstances which expose the (victim) to a substantial risk of physical injury.*" (Emphasis added; internal quotation marks omitted.) Commission to Revise the Criminal Statutes, Penal Code comments, supra, § 53a-95, commission comment. As our Supreme Court has often stated, "[w]hile the commission comment hardly has the force of enacted law, it, nevertheless, may furnish guidance." (Internal quotation marks omitted.) *State* v. *Higgins*, supra, 44; *Valeriano* v. *Bronson*, 209 Conn. 75, 94, 546 A.2d 1380 (1988). Last, we note that this court has set forth the elements of unlawful restraint in the first degree, including the specific intent requirement, without indicating that specific intent applies to the second element of § 53a-95. See *State* v. *Davis*, 13 Conn. App. 667, 672, 539 A.2d 150 (1988). In *Davis*, the court held that in order to convict the defendant of unlawful restraint in the first degree, the state must prove "that the defendant restrained the victim under circumstances which exposed her to a substantial risk of physical injury and that the defendant entertained the specific intent to restrain the victim." Id. The decision in *Davis* is in harmony with the general scope of the statute.[10] The express language of the statute makes it clear that the evil the legislature sought to avoid through § 53a-95 (a) was the risk of physical injury to persons who are being restrained. We conclude that specific intent does not apply to the second element of § 53a-95 (a).

## C

The defendant's final instructional claim is that the court abused its discretion when it improperly failed

---

[10] We note that the cases cited by the defendant, *State* v. *Phu Dinh Le*, supra, 17 Conn. App. 343, and *State* v. *Bitting*, 162 Conn. 1, 291 A.2d 240 (1971), do not support the proposition put forth by the defendant that General Statutes § 53a-95 (a) required the state to prove that he had the specific intent to restrain *and* the specific intent to expose the victim to a

to comment on the evidence as it related to charges that arose from three separate incidents. We are not persuaded.

In *State* v. *Lemoine*, 233 Conn. 502, 659 A.2d 1194 (1995), our Supreme Court concluded that "review of or comment on the evidence is not constitutionally mandated where the trial court, in the exercise of its sound discretion, determines that such commentary is not necessary and that the jury would be properly instructed and not misled in its absence." Id., 512. In reaching that conclusion, the Supreme Court noted that "[i]t has long been established that [i]n properly instructing the jury it may or may not be necessary for the court to recall the attention of the jury to the evidence and to the facts which the State and the accused respectively claim to have established, or to comment upon the evidence or express an opinion as to its weight, or as to what verdict would be proper if the jury should find certain facts to have been proved. . . . It is not necessarily error to omit all comment upon the bearing and weight of evidence; and generally the extent to which the court should discuss the evidence in submitting a case to the jury is, so long as in criminal cases the jury [is] not directed how to find [its] verdict, within the discretion of the trial judge." (Internal quotation marks omitted.) Id., 510–11.

In the present case, after the close of the evidence and final arguments of counsel, the court instructed the jury as to the law applicable to all of the charges against the defendant. The court then instructed the jury as to the elements that the state must prove as to each of the crimes charged in the information in order to find the defendant guilty. The court's instructions specified the incidents to which the various charges

substantial risk of injury. To apply such a broad reading to those cases would unjustifiably narrow the scope of the statute.

against the defendant applied, and the jury had the information during deliberations. The issues presented were, by and large, narrow and uncomplicated, and the elements of the crimes with which the defendant was charged and the evidence presented were not difficult to understand. Moreover, the final arguments of counsel thoroughly reviewed the testimony given by the witnesses. We conclude that it was not reasonably possible that the jury was misled by the court's failure to comment on the evidence during its charge, and no injustice to the defendant resulted by reason of the court's instructions. See id., 516; see also *State* v. *Glover*, 40 Conn. App. 387, 394, 671 A.2d 384, cert. denied, 236 Conn. 918, 673 A.2d 1145 (1996). We conclude that the defendant's claim fails to satisfy the third prong of *Golding.*

## III

The defendant claims that the court abused its discretion and violated his fifth amendment due process rights by denying his motion for a continuance. The defendant argues that the continuance was necessary in order for him to prepare his defense adequately. We disagree.

Following the state's case-in-chief, defense counsel moved for a judgment of acquittal on the ground of insufficiency of the evidence. The court denied the motion, at which time defense counsel orally requested a continuance, arguing that "there is information [the defendant] needs to develop that [the defendant] will not have available here today, and so [the defendant] is asking for a two week continuance." The court denied this request, reasoning: "This case has been pending for a very long time. Any evidence that was necessary should have been prepared. I have heard no presentation as to what that evidence might be or why it was not obtained. The request is denied."

A trial court possesses broad discretion in deciding whether to grant or deny a motion for a continuance. *State* v. *Williams,* 200 Conn. 310, 320, 511 A.2d 1000 (1986). "The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's decision will be made." (Internal quotation marks omitted.) *State* v. *Marshall,* 51 Conn. App. 469, 472, 722 A.2d 1221, cert. denied, 248 Conn. 901, 732 A.2d 178 (1999). Moreover, "[t]o prove an abuse of discretion, the appellant must demonstrate that the denial of the continuance was unreasonable or arbitrary." *State* v. *Breckenridge,* 66 Conn. App. 490, 495, 784 A.2d 1034, cert. denied, 259 Conn. 904, 789 A.2d 991 (2001). "[T]he right of a defendant to a continuance is not absolute and the propriety of a denial of one is to be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (Internal quotation marks omitted.) *State* v. *Williams,* supra, 320.

The record reveals that the defendant's case had been pending for one year and that he had been represented by counsel during the course of the trial. As the court noted, the defendant cited no specific evidence or witness that he needed to obtain that would have warranted a continuance in the middle of trial. We conclude that the court did not abuse its discretion when it denied the defendant's motion for a continuance.

IV

The defendant's final claim on appeal is that his due process right to a fair trial was violated as a result of several instances of prosecutorial misconduct during closing argument. Although the defendant did not

object to any of the alleged misconduct challenged on appeal, he maintains that he is entitled to a new trial on the ground that the claimed misconduct deprived him of a fair trial. We disagree.

We begin by setting forth the applicable standard of review. "[I]n analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) *State* v. *Serrano*, 91 Conn. App. 227, 231, 880 A.2d 183, cert. denied, 276 Conn. 908, 884 A.2d 1029 (2005).

"Only if we conclude that prosecutorial misconduct has occurred do we then determine whether the defendant was deprived of his due process right to a fair trial. In doing so, we must determine whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial misconduct, therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties. . . . This inquiry is guided by an examination of the following *Williams*[11] factors: the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the

[11] See *State* v. *Williams*, 204 Conn. 523, 529 A.2d 653 (1987).

strength of the state's case." (Internal quotation marks omitted.) *State* v. *Schiavo*, 93 Conn. App. 290, 302, 888 A.2d 1115, cert. denied, 277 Conn. 923, 895 A.2d 797 (2006).

Because the claimed prosecutorial misconduct occurred during closing argument, we set forth the legal principles applicable to such claims. "[P]rosecutorial misconduct of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such misconduct has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. . . .

"Last, we note that [w]e do not scrutinize each individual comment in a vacuum, but rather we must review the comments complained of in the context of the entire trial. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Citation omitted; internal quotation marks omitted.) *State* v. *Boyd*, 89 Conn. App. 1, 29–30, 872 A.2d 477, cert. denied, 275 Conn. 921, 883 A.2d 1247 (2005). With the foregoing in mind, we turn to the defendant's specific claims.

The defendant's claims of prosecutorial misconduct fall into two categories of proscribed conduct: (1)

improper expression of the prosecutor's personal opinion and (2) improper introduction of facts that were not in evidence. We therefore review each claim to determine whether, in fact, the prosecutor committed misconduct.

## A

The defendant contends that the prosecutor improperly expressed his personal opinion during closing argument regarding the credibility of the defendant and Williams when he suggested that in considering their conflicting testimony, Williams was to be believed. We are not persuaded.

The following additional facts are relevant for our resolution of the defendant's claim. During closing argument, the prosecutor made several statements with regard to the testimony offered by the witnesses. After commenting on the discrepancies in the testimony provided by the defendant and Williams, the prosecutor made the following statement. "What [the defendant] says, taken as a whole, doesn't make sense. What does make sense is what Felicia Williams says that can be verified and checked in various different ways. But when you look at this testimony, look at it critically, thoughtfully, talk to each other about it; you will find that Felicia Williams' testimony stands up. It stands up to the criticism of common sense. It stands up to cross-examination, and it stands up to the allegations of [the defendant]." When referring to Klioze's testimony, which corroborated the testimony of Williams, the prosecutor stated: "You can tell Felicia Williams is being truthful that she was abducted and shoved into that car against her will." Referring to the defendant's motives for wanting to preserve his position at Hillcrest when evidence was admitted that he had resigned prior to the incident, the prosecutor stated: "Was he being truthful with you? Was he an accurate reporter? The evidence

can be tested, and the answer is no." Finally, the prosecutor made an additional statement in reference to the conflicting testimony offered at trial: "Does anything the defendant say in regard to these matters make any sense? . . . Isn't what Felicia Williams said a little more truthful?"

"As a general rule, prosecutors should not express their personal opinions about the guilt of the defendant, credibility of witnesses or evidence. . . . A prosecutor, however, is permitted to argue to the jury that the evidence and the reasonable inferences to be drawn therefrom should lead the jury to a conclusion as to the credibility of witnesses. . . . It is not improper for a prosecutor to comment on the credibility of a witness as long as he neither personally guarantees the witness' credibility nor implies that he has knowledge of the witness' credibility outside the record." (Citation omitted; internal quotation marks omitted.) *State* v. *Serrano*, supra, 91 Conn. App. 235.

At trial, there were discrepancies in the testimony given by the defendant and Williams. The prosecutor was simply marshaling the evidence for the jury to consider when assessing the credibility of those witnesses. See id. In doing so, he neither personally guaranteed either witness' credibility, nor indicated that he had knowledge outside the record about their credibility. His comments were not improper.

B

The defendant's second claim of misconduct is that the prosecutor improperly introduced facts that were not in evidence during closing argument. We disagree.

During closing and rebuttal arguments, the prosecutor asked the jury to draw several inferences on the basis of facts in evidence. First, the prosecutor made the following statement: "And there's some evidence

that [the defendant] wished [Williams] to drop all the charges against him." Second, the prosecutor referenced a police report and photographs that were not in evidence. Third, the prosecutor characterized the defendant's testimony in the following manner during his rebuttal argument: "I'm trying to, *my words*, molest her, aggravate, bother her, harass her, and that's a violation of the protective order." (Emphasis added.)

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument." (Internal quotation marks omitted.) *State* v. *Williams*, 81 Conn. App. 1, 13, 838 A.2d 214, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

From our review of the record, it is clear from Williams' testimony that a reasonable jury could have concluded that at some point during the course of their relationship, the defendant had attempted to convince her to drop charges against him. Specifically, Williams testified that the defendant "used to manipulate me and say he loved me and ask me to drop charges, and I used to do it. I'm going to tell the truth because I'm here to tell the truth." Asking the jury to draw an inference from that testimony, the prosecutor made the assertion during closing argument that there was "some evidence that [the defendant] wished [Williams] to drop all the charges against him."

"Our decisional law on prosecutorial misconduct makes clear that, as the state's advocate, a prosecutor may comment on the evidence adduced at trial and argue inferences that the jurors might draw therefrom." *State* v. *Sargent*, 87 Conn. App. 24, 34, 864 A.2d 20, cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005); see also *State* v. *Perkins*, 271 Conn. 218, 268, 856 A.2d 917 (2004).

Although there was no specific evidence that the defendant had asked Williams to drop the charges in these cases, the prosecutor's remark amounted to a request that the jury draw an inference from the testimony adduced at trial in light of the defendant's past history of manipulative behavior. We are mindful that "closing arguments often have a rough and tumble quality about them, [and that] some leeway must be afforded to the advocates in offering arguments to the jury in final argument." (Internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 751, 888 A.2d 985 (2006). The prosecutor's argument was not improper.

In the second instance, concerning the police report and photographs, the prosecutor was marshaling the evidence and commenting on the testimony of the witnesses with regard to the injuries that Williams had sustained in the incident that occurred between her and the defendant on May 20, 2003. During that portion of his closing argument, the prosecutor noted that there was no police report or photographs to support the purported injuries. The prosecutor did not assert that a report or photographs were to be considered or even available. To the contrary, after summarizing the testimony of one of the state police troopers, with regard to his recollection of Williams' injuries, the prosecutor made the following statement: "[W]hat happened to those photos and the rest of the report is a mystery, at least to you. There is no evidence to that." The prosecutor merely was suggesting that the jury not ignore the state police trooper's testimony as to Williams' injuries because of the lack of documentary evidence. Those comments were made in the course of the prosecutor's commenting on the facts in evidence and were not improper. Moreover, we note that the defendant was acquitted of the charges that arose from the incident on May 20, 2003, which indicates that there was no prejudice to the defendant as a result of the prosecutor's

statement. See *State* v. *Gauthier*, 73 Conn. App. 781, 789–90, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003).

In the third instance, during rebuttal argument and in response to closing argument by defense counsel, the state characterized the defendant's testimony in the following manner: "I'm trying to, *my words*, molest her, aggravate, bother her, harass her, and that's a violation of the protective order." (Emphasis added.) Those comments were supported adequately by evidence in the record. The defendant testified that when he approached Williams, he specifically said to her, "what happened to your dope fiend boyfriend?" When asked by the prosecutor if the defendant believed that statement might "provoke [Williams] to, in your words, act crazy again," the defendant replied, "[i]n a sense, it was in the back of my mind." The defendant later testified that once he was in the car with Williams, he said to her, "you so into this man you going to start neglecting the kids." On the basis of that testimony, the prosecutor asked the jury to draw a reasonable inference that the defendant may have wanted to molest, aggravate, bother and harass Williams. We conclude, therefore, that his argument did not improperly rely on facts not in evidence. Although the prosecutor could have articulated his argument with greater precision; see *State* v. *Skakel*, supra, 276 Conn. 751; we do not conclude that his statement was improper.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] Moreover, as to those statements made by the prosecutor that are being questioned for the first time on appeal as improper, we note that defense counsel's failure to object to the prosecutor's argument when it was made indicates that he did not believe that it was unfair in view of the record of the case at the time. See *State* v. *Stevenson*, 269 Conn. 563, 576, 849 A.2d 626 (2004).