STATE OF CONNECTICUT *v.* RICHARD SERRANO
(AC 24328)

Lavery, C. J., and Dranginis and McLachlan, Js.

Argued May 31—officially released September 6, 2005

*Raymond L. Durelli*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's

attorney, and *Michael A. Colombo, Jr.*, former deputy assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Richard Serrano, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit burglary in the second degree in violation of General Statutes §§ 53a-49 (a) (2)[1] and 53a-102.[2] On appeal, the defendant claims that (1) he was deprived of a fair trial due to prosecutorial misconduct, (2) there was insufficient evidence to prove his guilt beyond a reasonable doubt and (3) the trial court failed to instruct the jury properly. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of November 2, 2001, the victim, Ana Yepes-Sanabria, was alone in her third floor apartment when she heard someone knocking on her door. The knocking continued for fifteen to twenty minutes. During that time, Sanabria neither answered the door nor responded orally to the knocking. Only after she saw the doorknob being turned back and forth did Sanabria call the police. While she was on the telephone with the police, Sanabria saw a fork come past the door lock striker. Although there was some uncertainty as

[1] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when such person (1) enters or remains unlawfully in a dwelling at night with intent to commit a crime therein, or (2) enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein."

to whether she opened the door or if the door opened because of the inserted fork, it is undisputed that the door opened one to two feet and that Sanabria saw the defendant standing outside the door with a fork in his hand at the locking mechanism.[3] At that point, the defendant claimed to be at the wrong apartment, covered his face and ran down the stairs. Sanabria then walked into the hallway to look out a window and saw the defendant exit the front door of the building and run to the rear of the building.

During that time, Sanabria's neighbor, Rudy Flores, who was in the second floor hallway, saw the defendant run down the stairs. When police officers arrived shortly thereafter, Sanabria described the events that had taken place but did not go to the police station at that time or view any photographs of suspects. Flores, however, went to the police station and identified the defendant from an array of photographs as the individual whom he saw run down the stairs. On March 18, 2002, while Sanabria was at the police station to inquire about two previous burglaries of her apartment, she agreed to view an array of photographs of suspects relating to the most recent incident. It was at that time that Sanabria identified the defendant as the individual who was standing outside her apartment with the fork on the night of the incident.

At trial, both Sanabria and Flores again identified the defendant as the individual who was outside Sanabria's door and later seen running down the stairs of the apartment building. The defendant did not testify or call any witnesses but conceded that he was in the apartment building on the night of the incident. The jury found the defendant guilty of attempt to commit

---

[3] Although Sanabria's original statement to police officers was that she opened the door, she testified at trial that the door was forced open by the defendant.

burglary in the second degree. Following the verdict, the defendant filed a motion for a judgment of acquittal, which was denied. In a subsequent trial to the court, the defendant also was convicted of being a persistent serious felony offender; General Statutes § 53a-40 (c); and was sentenced to a total effective term of thirteen years in prison and five years of special parole. This appeal followed. Additional facts will be set forth as necessary.

## I

The defendant's first claim on appeal is that his due process right to a fair trial was violated as a result of several instances of prosecutorial misconduct. As the defendant did not object to the majority of those instances, he seeks review of the unpreserved claims pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We agree that the prosecutor engaged in two instances of misconduct. We conclude, however, that the misconduct was not so severe as to deprive the defendant of a fair trial.

Unpreserved claims of prosecutorial misconduct must be reviewed by applying the factors set out in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987) and, therefore, *Golding* review is unnecessary. *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004). "[I]n analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) Id., 572.

If we determine that prosecutorial misconduct has occurred, we must then apply the following six factors set out in *State* v. *Williams*, supra, 204 Conn. 540, to determine whether the misconduct was so severe as to amount to a denial of due process. See *State* v. *Stevenson*, supra, 269 Conn. 573. The *Williams* factors are "the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) Id.

## A

The defendant's claims of prosecutorial misconduct fall into three categories of proscribed conduct: (1) improper appeal to the emotions and fears of the jury; (2) improper expression of the prosecutor's personal opinion; and (3) improper introduction of facts that were not in evidence. Although the defendant also claims that the prosecutor committed misconduct by asking leading questions during direct examination, we decline to treat an evidentiary claim as a distinct category of prosecutorial misconduct.[4] We therefore review each category of claimed misconduct in turn to determine whether, in fact, the prosecutor committed misconduct.

## 1

The defendant claims that the prosecutor appealed to the emotions and fears of the jurors during closing

---

[4] The defendant's claim that the prosecutor committed misconduct by asking improper leading questions on direct examination is without merit. Our review of the record disclosed that the prosecutor, on a number of occasions, asked leading questions. Defense counsel, however, objected to those questions, and the objections were sustained by the court. Moreover, the court frequently admonished the prosecutor regarding leading questions. The defendant has provided no authority for his proposition that by asking leading questions on direct examination, a prosecutor commits misconduct.

argument when he asked the jurors to put themselves in Sanabria's position when she heard the knocking on her door.[5] We agree.

It is well settled that "[a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal. . . . Therefore, a prosecutor may argue the state's case forcefully, [but] such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *David P.*, 70 Conn. App. 462, 475, 800 A.2d 541, cert. denied, 262 Conn. 907, 810 A.2d 275 (2002). Nevertheless, "[w]hen making closing arguments to the jury . . . [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *John L.*, 85 Conn. App. 291, 296, 856 A.2d 1032, cert. denied, 272 Conn. 903, 863 A.2d 695 (2004).

The prosecutor implored the jurors to consider the evidence and to use their common sense and experience when assessing the credibility of the witness. Neverthe-

---

[5] During closing argument, the prosecutor made the following statements: "Think, ladies and gentlemen of the jury, how do you characterize your home? This happened in her home. It's a place, using your common sense, it's the most sacred place to all of you. Her husband wasn't home. She's twenty-two years old. How do you think she was feeling? Put yourself in her shoes for just a moment and ask yourself what was going though her mind when she heard [knocking] at the door. . . . Think about how that feels when you're in her shoes, sitting on a couch with a phone in hand, without your husband present, twenty-two years old, with two previous burglaries. How terrified would you be? How frightened would you be? How disoriented would you be in terms of your mind—"

less, we agree with the defendant that in doing so, the prosecutor improperly asked the jurors to interject their emotions into the deliberation process.

## 2

The defendant claims that the prosecutor improperly expressed his personal opinion throughout the course of the trial regarding (1) the credibility of the state's two key witnesses, (2) the proper verdict, (3) defense counsel's representation of the defendant and (4) the state's burden of proof. We will review in turn each claimed instance of improper expression of the prosecutor's personal opinion.

## a

The defendant claims that the prosecutor improperly expressed his personal opinion regarding the credibility of the state's two key witnesses during closing arguments when he suggested that conflicting statements by those witnesses concerned only "small details" and should not impact the jury's assessment of the witnesses' credibility.[6] We disagree.

[6] During initial closing argument, the prosecutor made the following statements: "Whether a contradiction is an innocent lapse of memory or an intentional falsehood or only a small detail, credibility of witnesses. Ask yourself, how many small details were they probably mistaken about? Probably a bunch. What hand people were holding, if there were noises.

"Rudy was asked if there were noises coming from upstairs. Who pays attention when they're on the phone to what's going on above you or when you're talking to your mom or whoever is calling? Who pays attention to that stuff? And who remembers that ten months later? Small details.

"The judge will tell you that you can weigh that and give the person credibility, whether it was a small detail or was it an intentional falsehood. Ask yourself this: Did these people get up here and give any intentional falsehoods, or did this incident really happen? Ladies and gentlemen, you know what happened. You heard the testimony."

During his rebuttal argument, the prosecutor made the following statements. "[Defense counsel] had said something about a characterization of time. [The victim] said fifteen to twenty minutes of knocking at the door, and she wasn't thinking clearly. She also testified that it took [the defendant] one to two minutes to run out of the third floor building. That was—her characterization of time is not relevant here. It isn't relevant. Use your common sense.

"As a general rule, prosecutors should not express their personal opinions about the guilt of the defendant, credibility of witnesses or evidence." *State* v. *Holliday*, 85 Conn. App. 242, 261, 856 A.2d 1041, cert. denied, 271 Conn. 945, 861 A.2d 1178 (2004). A prosecutor, however, is permitted "to argue to the jury that the evidence and the reasonable inferences to be drawn therefrom should lead the jury to a conclusion as to the credibility of witnesses. . . . It is not improper for a prosecutor to comment on the credibility of a witness as long as he neither personally guarantees the witness' credibility nor implies that he has knowledge of the witness' credibility outside the record." (Internal quotation marks omitted.) *State* v. *Sargent*, 87 Conn. App. 24, 36, 864 A.2d 20, cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005).

At trial, there were minor discrepancies in the testimony given by the two key witnesses. The prosecutor merely was marshaling the evidence for the jury to consider when assessing the credibility of the witnesses. In doing so, he neither personally guaranteed the witnesses' credibility nor indicated that he had knowledge outside the record about their credibility. His comments, therefore, were not improper.

b

The defendant next claims that the prosecutor improperly expressed his personal opinion regarding the proper verdict when he explained to the jury that the facts of the case warranted a "normal verdict" of guilty and that the fact that one of the witnesses, a police officer, testified that he had never heard of any-

"To go down these steps, as Rudy Flores testified, third floor down the steps to the first floor, do you think it would take one or two minutes to run down there? Obviously, use your common sense. Her characterization of time may be off. Does that mean that this didn't happen? Of course it doesn't mean that. Those are small details, ladies and gentlemen. Small details, and not, when you're weighing credibility of witnesses, considered falsehoods."

one breaking into a home with a fork did not mean that it could not have happened in that manner.[7] We disagree.

"The prosecutor may not express his own opinion, directly or indirectly . . . as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 713, 793 A.2d 226 (2002).

It is clear that the prosecutor was not expressing his personal opinion but, rather, was trying to impress upon the jury that the defendant's guilt could be inferred from the strength of the evidence presented. "It is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . . " (Internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 465, 832 A.2d 626 (2003). The prosecutor's comments, therefore, were not improper.

c

The defendant next claims that in three separate instances, the prosecutor improperly expressed his personal opinion when referring to defense counsel's representation of the defendant as improper. In the first instance, while arguing the merits of his case during

[7] During rebuttal, the prosecutor made the following statements. "I'll leave you with this, and the judge will read this to you, and he couldn't explain it and that's why the verdict of guilty is a normal verdict." Later in his rebuttal, the prosecutor stated that the defendant had opportunity and added the following comments. "It's the most compelling evidence that he could not talk about at all in which the verdict of guilty must be rendered."

initial closing argument, the prosecutor referred to a portion of defense counsel's argument as "smoke and mirrors."[8] In the second and third instances, while making two objections, the prosecutor claimed that defense counsel was making improper arguments in front of the jury and stated that he was "tricking" the court.[9]

"While a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Furthermore, [t]he prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel. . . . There is a distinction between argument that disparages the integrity or role of defense counsel and argument that disparages a theory of defense." (Citation omitted; internal quotation marks omitted.) *State* v. *Orellana*, 89 Conn. App. 71, 101, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005). In *Orellana*, we held that a prosecutor's reference to the argument of the defendant's attorney as " 'smoke and mirrors' . . . . was improper because it implied, to whatever degree, that the defendant's attorney had not based his argument on fact or reason, but

[8] The prosecution made the following statements during initial closing argument. "The one thing that [defense counsel] could not explain to you, and the judge will explain to you, is [the defendant's] flight, is his flight. He couldn't explain that to you. He couldn't—he didn't have anything to say during his argument about flight. Did you notice that? He talked the whole time about—let's talk about this. Fingerprints were taken, seal off the scene, no physical evidence, no fork recovered. Ladies and gentlemen, it's smoke and mirrors."

[9] The prosecutor made the following statements during his objection to defense counsel's cross-examination of the witnesses, police officers Brian Cronin and Lawrence Ferraro. "If [defense counsel] wants to make that argument, he knows he can only make that outside the presence of the jury, Your Honor. I'd ask that you . . . sustain the state's objection that that is hearsay. . . .

"Objection. He's referring to something that—he's tricking the—Judge, I'm objecting. He's referring to a—a strike plate and a striker are two different things."

had intended to mislead the jury by means of an artfully deceptive argument. The prosecutor implied that the defendant's attorney intended to deceive and thereby impugned the integrity of the defendant's attorney." Id., 103. For that reason, the argument constituted prosecutorial misconduct.

In the present case, the court overruled the prosecutor's objections in which he suggested that defense counsel was attempting to "trick" the court and stated that defense counsel was making improper arguments. After reviewing the entire transcript, we are satisfied that neither comment constituted misconduct. Nonetheless, the prosecutor's comment regarding defense counsel's argument as "smoke and mirrors" clearly was improper.

d

The defendant next claims that the prosecutor improperly expressed his personal opinion regarding the state's burden of proof when he discounted possible alternative reasons for the defendant's presence in Sanabria's apartment building on the night of the incident.[10] We disagree.

After careful review of the record, we are satisfied that the prosecutor merely was commenting on the evidence presented and directing the jury's attention to the reasonable inferences to be drawn from that evidence. See State v. Thompson, supra, 266 Conn. 465. The prosecutor's comments, therefore, were not improper.

---

[10] After discounting several alternative reasons to explain the defendant's presence at the apartment building, the prosecutor made the following statement. "What was he there to do? Not there to get out of the weather, not there to get a place to sleep, not there to sexually assault or assault. He was there to steal. That's it. The intent to commit a crime therein. He was there to steal. Bottom line. Why else was he there?"

3

The defendant's final claim of misconduct is that the prosecutor improperly introduced facts that were not in evidence relating to the identification of the defendant by one of the witnesses when the prosecutor stated that the defendant had conceded to the identification by Sanabria.[11] We disagree.

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument." (Internal quotation marks omitted.) *State* v. *Williams*, 81 Conn. App. 1, 13, 838 A.2d 214, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

From our review of the record, it is clear that Flores identified the defendant as the individual whom he had seen during the incident and that the defendant later conceded that Flores had made that identification. During initial closing argument, the prosecutor made reference to the identification by Flores, albeit not in the most articulate manner, when he stated that the defendant had conceded to the identification. By doing so, the prosecutor was referring to facts that were in evidence, and his comments, therefore, were not improper.

B

Having identified two instances of prosecutorial misconduct, we must now conduct the second step of our two part analysis by applying the six *Williams* factors

---

[11] The prosecutor made the following statement. "Rudy Flores testified that he saw him. Made a 100 percent identification of him. They conceded that. . . . [Defense counsel] conceded that there was a 100 percent identification that his client made." Once again referring to the testimony submitted by Flores, the prosecutor stated that the identification, "at this point, based on this evidence, is uncontroverted, and the defense even conceded it with the witness."

to determine whether that misconduct deprived the defendant of a fair trial. See part I.

As we begin our analysis, we are mindful of the general principles that guide the next step of our inquiry. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . In determining whether the defendant was denied a fair trial [by virtue of prosecutorial misconduct] we must view the prosecutor's comments in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Waden*, 84 Conn. App. 147, 158, 852 A.2d 817, cert. denied, 271 Conn. 916, 859 A.2d 574 (2004).

The two isolated instances of prosecutorial misconduct identified by this court, pursuant to our analysis of the six *Williams* factors, neither affected the integrity of the trial nor deprived the defendant of his due process right to a fair trial. The prosecutor's improper comments made during closing arguments regarding the role of defense counsel and the prosecutor's improper appeal to the emotions and fears of the jury did not distract from the critical issues in the case. The defendant's presence in the apartment building on the night of the incident was undisputed, and the circumstantial evidence supported the state's theory that the defendant had the necessary intent to commit the crime of attempt to commit burglary in the second degree. Moreover, defense counsel did not raise any objections during the prosecutor's closing or rebuttal arguments and failed to seek curative measures from the court. Although a failure to raise any objections does not limit our review, "[d]efense counsel's objection or lack thereof allows an inference that counsel did not think the remarks were severe." *State* v. *Santiago*, 269 Conn. 726, 759,

850 A.2d 199 (2004). Finally, although the prosecutor's argument was in large part based on circumstantial evidence, he nonetheless presented a strong case against the defendant. In light of those factors, we conclude that the two isolated instances of misconduct did not deprive the defendant of a fair trial.

## II

The defendant's second claim on appeal is that the evidence adduced at trial was insufficient to sustain his conviction. To convict the defendant of attempt to commit burglary in the second degree in violation of §§ 53a-49 (a) (2) and 53a-102, the state had to prove beyond a reasonable doubt that the defendant attempted unlawfully to enter Sanabria's apartment at night with the intent to commit a crime therein. See General Statutes §§ 53a-49 (a) (2) and 53a-102. The defendant argues that the facts do not support a finding that there was an attempted "surreptitious entry" into Sanabria's apartment. We disagree.

"The appellate standard of review of sufficiency of the evidence claims is well established. In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"The evidence must be construed in a light most favorable to sustaining the jury's verdict. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a

court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . .

"We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. . . . We are content to rely on the [jury's] good sense and judgment." (Internal quotation marks omitted.) *State* v. *Weisenberg*, 79 Conn. App. 657, 662, 830 A.2d 795, cert. denied, 266 Conn. 932, 837 A.2d 806 (2003).

"Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Citation omitted; internal quotation marks omitted.) *State* v. *Booth*, 250 Conn. 611, 656, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000).

On the basis of the evidence presented and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the defendant had the necessary intent to enter Sanabria's apartment to commit a crime therein. The record shows that Sanabria was in her apartment at the relevant time when she saw a fork

being inserted past the door lock striker and saw the doorknob turn. When the door opened, she saw the defendant holding a fork near the locking mechanism. The defendant stated that he was at the wrong apartment, covered his face and ran down the stairs. It was reasonable for the jury to infer that the defendant was attempting to break into the apartment. Flores testified that he observed the defendant run down the hallway shortly after the incident occurred. It also was reasonable for the jury to infer that the defendant was fleeing in order to avoid detection.

Viewing the evidence in a light most favorable to sustaining the verdict, we conclude that the jury logically could infer from the evidence presented at trial that the defendant attempted to break into Sanabria's apartment at night to commit a crime therein, which supports the conviction of attempt to commit burglary in the second degree, as found by the jury.

### III

The defendant's final claim on appeal is that the court failed to instruct the jury as to (1) all of the elements of the crime and (2) the specific crime of burglary.[12] Preliminarily, we note that the defendant neither filed a request to charge nor objected to the jury instructions that were given by the court.

---

[12] When the court charged the jury, it referred to the crime of "attempted burglary" rather than "burglary." The relevant portion of the court's charge was as follows: "A person is guilty of attempted burglary in the second degree when such person—when such person unlawfully enters or attempts to unlawfully enter a dwelling at night with intent to commit a crime therein. For you to determine the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt.

"One, that the defendant knowingly and unlawfully attempted entry to the premises; two, that such premises constituted a dwelling; three, that the unlawful attempted entry was effected or occurred with the defendant's intent to commit a crime in the dwelling; and four, that this was effected or occurred at night."

"It is well established that [t]his court is not bound to review claims of error in jury instructions if the party raising the claim neither submitted a written request to charge nor excepted to the charge given by the trial court." (Internal quotation marks omitted.) *State* v. *Davis*, 261 Conn. 553, 562, 804 A.2d 781 (2002). The defendant seeks to prevail on his claim under *State* v. *Golding*, supra, 213 Conn. 239–40. The defendant's claim is reviewable because he has satisfied the first two prongs of *Golding*, specifically that the record is adequate for our review and that the claim that the court improperly instructed the jury as to an element of a charged offense is of constitutional dimension. See *State* v. *DeJesus*, 260 Conn. 466, 472–73, 797 A.2d 1101 (2002). We conclude, however, that the defendant's claim fails under the third prong of *Golding*.

"[U]nder . . . *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, [i]t is reasonably possible that the jury was misled. . . . [A] jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Esposito*, 81 Conn. App. 189, 192–93, 838 A.2d 1044, cert. denied, 268 Conn. 909, 845 A.2d 413 (2004).

After careful review of the charge in its entirety, we are satisfied that it was not reasonably possible that the jury was misled by the court's instruction. Regardless of the fact that the court prefaced its instruction on the elements of burglary by defining the crime as "attempted burglary," the court articulated and correctly charged on each essential element of the offense

of attempt to commit burglary in the second degree.[13] "We have recognized that when a court gives a lengthy jury instruction, a slip of the tongue may occasionally occur." *State* v. *Jarrett*, 82 Conn. App. 489, 497, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004). Clearly, the jury was given proper guidance, despite the court's slight slip of the tongue. We therefore conclude that the defendant was not denied his constitutional right to a fair trial. Accordingly, the defendant's claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] The defendant's claim that the charge was defective because it did not define the crime that he intended to commit is without merit. See *State* v. *Zayas*, 195 Conn. 611, 617, 490 A.2d 68 (1985).