STATE OF CONNECTICUT *v.* EMMANUEL BLANGO
(AC 26826)

Schaller, DiPentima and Stoughton, Js.

101

Argued April 17—officially released August 7, 2007

*Annacarina Del Mastro*, senior assistant public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Elizabeth C. Leaming*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Emmanuel Blango, appeals from the judgment of conviction, rendered after

a jury trial, of aggravated sexual assault in the first degree in violation of General Statutes § 53a-70a (a) (1),[1] kidnapping in the second degree with a firearm in violation of General Statutes § 53a-94a,[2] two counts of sexual assault in the third degree with a firearm in violation of General Statutes § 53a-72b[3] and threatening in the second degree in violation of General Statutes § 53a-62 (a) (1).[4] The defendant raises the following five claims on appeal: (1) the trial court improperly admitted uncharged misconduct evidence; (2) he was deprived of a fair trial as a result of prosecutorial impropriety;[5] (3) the court's jury instructions improperly diluted or shifted the state's burden to prove compulsion, thereby depriving him of a fair trial; (4) the court improperly admitted constancy of accusation evidence as substantive evidence without sua sponte issuing a limiting

[1] General Statutes § 53a-70a (a) provides in relevant part: "A person is guilty of aggravated sexual assault in the first degree when such person commits sexual assault in the first degree as provided in section 53a-70, and in the commission of such offense (1) such person uses or is armed with and threatens the use of or displays or represents by such person's words or conduct that such person possesses a deadly weapon . . . ."

[2] General Statutes § 53a-94a provides in relevant part: "A person is guilty of kidnapping in the second degree with a firearm when he commits kidnapping in the second degree, as provided in section 53a-94, and in the commission of such offense he uses or is armed with and threatens the use of or uses or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm. . . ."

[3] General Statutes § 53a-72b (a) provides in relevant part: "A person is guilty of sexual assault in the third degree with a firearm when such person commits sexual assault in the third degree as provided in section 53a-72a, and in the commission of such offense, such person uses or is armed with and threatens the use of or displays or represents by such person's words or conduct that such person possesses a pistol, revolver, machine gun, rifle, shotgun or other firearm. . . ."

[4] General Statutes § 53a-62 (a) provides in relevant part: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

[5] Although the parties briefed the defendant's claim as one of prosecutorial misconduct, we refer to the claim as one of prosecutorial impropriety pursuant to our Supreme Court's decision in *State* v. *Fauci*, 282 Conn. 23, 26 n.2, 917 A.2d 978 (2007).

instruction; and (5) the enhancement of his sentence under General Statutes §§ 53a-40b[6] and 53-202k[7] must be reversed. We affirm the judgment of the trial court.

From the evidence presented at trial, the jury reasonably could have found the following facts. At approximately 1 a.m., on April 3, 2003, the victim,[8] who was twenty years old at the time, was walking to a local convenience store in Willimantic to purchase a soda. As she was walking, the defendant approached her in his vehicle and asked her if she wanted to smoke marijuana. She agreed and got into the defendant's vehicle. The defendant drove to a nearby house in Mansfield, ostensibly to obtain marijuana. A few minutes after arriving at the house, the defendant told the victim that he was unable to get any marijuana. He proceeded to drive to a more secluded area and, as he was driving, asked the victim to perform oral sex on him. She refused, but the defendant insisted and repeatedly attempted to force her head into his lap as she resisted. He parked the vehicle, grabbed a gun from the backseat, pointed it at the victim's thigh and told her that he would shoot her if she did not perform oral sex on him.

---

[6] General Statutes § 53a-40b provides: "A person convicted of an offense committed while released pursuant to sections 54-63a to 54-63g, inclusive, or sections 54-64a to 54-64c, inclusive, other than a violation of section 53a-222, may be sentenced, in addition to the sentence prescribed for the offense to (1) a term of imprisonment of not more than ten years if the offense is a felony, or (2) a term of imprisonment of not more than one year if the offense is a misdemeanor."

[7] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[8] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

At trial, the victim testified that it was dark at the time of the assault but that she thought that the gun was silver with a dark or brown handle. Upon seeing the gun, the victim began to cry and acquiesced to the defendant's demand. The defendant returned the gun to the backseat and unzipped his pants. As the victim performed oral sex on him, the defendant forced her head down with his hand and touched her breast under her shirt and her buttocks over her jeans. The victim was crying. When the assault was over, the defendant said, "[n]ow, that wasn't so bad, was it?" After the defendant took the victim to a location she requested in Willimantic, the victim ran to a nearby police station and reported the sexual assault.

The defendant subsequently was arrested and charged. Thereafter, the state filed a substitute part B information charging the defendant with committing a class A, B or C felony with a firearm in violation of § 53-202k and committing an offense while released on bond in violation of § 53a-40b. The jury returned a verdict of guilty on all counts. At trial, the defendant testified in his defense. He claimed that the sexual act between him and the victim was consensual and that he never threatened the victim with a gun. Following the jury verdict, the defendant pleaded nolo contendere to the part B information. The court rendered judgment in accordance with the jury verdict and sentenced the defendant to a total effective term of twenty-one years imprisonment, followed by five years special parole, to run concurrently to any sentence then being served. This appeal followed. Additional facts will be set forth where necessary.

I

The defendant first claims that the court improperly admitted uncharged misconduct evidence. The defendant specifically refers to evidence of two subsequent

incidents, occurring on April 18, 2003, in which he possessed a gun. We disagree that the court's admission of this evidence was improper.

The following additional facts that reasonably could have been found by the jury are relevant to our resolution of the defendant's claim. On April 18, 2003, between 3 and 4 a.m., the defendant approached a group of female Eastern Connecticut State University students in his vehicle as they were walking on campus and held a silver and black gun outside of the vehicle's window. That same morning, at approximately 3:30 a.m., the defendant offered a ride to Timothy Vincent, who was hitchhiking in Willimantic. The defendant drove to a nearby automatic teller machine so that Vincent could withdraw money for gasoline. Vincent gave the defendant his automatic teller machine card and personal identification number and told the defendant to withdraw $300. After completing the transaction, the defendant pulled a silver or chrome plated gun on Vincent and ordered him out of the vehicle, retaining the card and the money. The defendant subsequently was apprehended by police and identified. The police recovered a silver handgun near the scene of the robbery.

In a pretrial motion in limine, the defendant sought to preclude any evidence of the gun that he allegedly displayed during the two incidents on April 18, 2003. During the hearing on the motion, the state contended that the evidence was admissible to corroborate crucial prosecution testimony and to prove an element of two of the crimes charged. The defendant objected to the admission of this evidence, claiming that its probative value was outweighed by its prejudicial effect. The defendant specifically referred to the dissimilarity between the description of the gun used in the sexual assault and that of the gun involved in the subsequent incidents.

The court ruled that the evidence of the uncharged misconduct was relevant for the purpose of corroborating crucial prosecution testimony, namely, the victim's testimony that the defendant was armed during the April 3, 2003 offense and her description of the weapon. The court also determined that the probative value of the evidence outweighed its prejudicial effect. In issuing its ruling, the court indicated that it would minimize any prejudice to the defendant by precluding the witnesses to the April 18, 2003 incidents from testifying as to specific threats made by the defendant and by allowing only one of the three university students to testify.

Following the testimony regarding each incident of April 18, 2003, the court gave the jury a limiting instruction. The court instructed the jury that the uncharged misconduct evidence was "not being admitted to prove bad character or propensity to commit criminal acts on the part of the defendant." Rather, the court instructed, the evidence was being admitted for the purpose of corroborating the victim's testimony. The court further instructed the jury not to consider the evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity. The court gave similar instructions in its final charge to the jury.

The defendant argues that the court improperly admitted the uncharged misconduct evidence to corroborate crucial prosecution testimony because the evidence of the other crimes did not directly corroborate the victim's testimony.[9] The defendant contends that

---

[9] In his brief, the defendant also argues that the court improperly admitted the uncharged misconduct evidence to prove an element of the crimes charged, specifically, that he possessed a gun. Although the state argued this as a basis for admission, the court admitted the evidence of uncharged misconduct solely for the purpose of corroborating crucial prosecution testimony. We therefore confine our review to whether the court properly admitted the uncharged misconduct evidence for this purpose.

the uncharged misconduct evidence was too attenuated because the descriptions of the gun used on April 18, 2003, differed from the victim's description of the gun, the April 18, 2003 offenses were dissimilar in nature to the alleged sexual assault and the offenses involving the students and the hitchhiker occurred fifteen days after the sexual assault. As a result, the defendant asserts that the evidence merely tended to show his criminal propensity and was unfairly prejudicial. The state counters that the court properly admitted the uncharged misconduct evidence to corroborate the victim's testimony that the defendant displayed a gun to her during the commission of the sexual assault. The state asserts that the defendant's testimony directly challenged the victim's testimony and argues that the uncharged misconduct evidence lent corroborative weight to the victim's testimony insofar as it established that close in time to the sexual assault, the defendant had access to a gun. The state further argues that the court mitigated any possible prejudicial effect by limiting the uncharged misconduct testimony. We agree with the state.

"The principles governing the admissibility of other misconduct by a defendant are codified in § 4-5 (a) and (b) of the Connecticut Code of Evidence. Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person. [Conn. Code Evid.] § 4-5 (a). Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of a crime, or *to corroborate crucial prosecution testimony*. Id., § 4-5 (b). If the evidence of other misconduct is relevant to a proper purpose, such evidence may be excluded if its probative value is outweighed by the

danger of unfair prejudice . . . . Id., § 4-3. Evidence of uncharged misconduct, therefore, is not per se inadmissible. We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect. . . .

"The admission of evidence of [other] misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . The problem is . . . one of balancing the actual relevancy of the other crimes evidence in light of the issues and other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Bunker*, 89 Conn. App. 605, 630–32, 874 A.2d 301 (2005), appeal dismissed, 280 Conn. 512, 909 A.2d 521 (2006).

In *State* v. *Mooney*, 218 Conn. 85, 129, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991), our Supreme Court established the scope of the exception allowing for the use of uncharged misconduct evidence to corroborate crucial prosecution testimony. The court explained that "[o]ther crimes evidence . . . is only admissible for corroborative purposes, if the corroboration is direct and the matter corroborated is significant. . . . Direct corroborating evidence is that which is not wholly disconnected, remote, or collateral to the matter corroborated. . . . The requirement that the corroborating evidence be direct is necessary in order to ensure that the link between the corroborative evidence and the facts to be

inferred therefrom is not too attenuated or nonprobative; otherwise, the evidence might unfairly reflect upon the defendant's propensity to commit crimes." (Citations omitted; internal quotation marks omitted.) Id.

We conclude that the court did not abuse its discretion by admitting evidence that the defendant displayed a gun during two separate incidents on April 18, 2003, in order to corroborate crucial prosecution testimony. The victim testified that the defendant threatened her with a gun in order to compel her to perform oral sex, an essential element of the charges against him of aggravated sexual assault in the first degree, kidnapping in the second degree with a firearm and sexual assault in the third degree with a firearm. In contrast, the defendant testified that the victim consented and that he never threatened her with a gun. The evidence regarding the April 18, 2003 incidents supported the victim's testimony and therefore was significant to the state's case. Furthermore, the uncharged misconduct evidence directly corroborated the victim's testimony as it established that approximately two weeks after the sexual assault, the defendant had a gun in his possession that was similar to the gun she testified was used in the assault. "Evidence indicating that an accused possessed an article with which the particular crime charged may have been accomplished is generally relevant to show that the accused had the means to commit the crime. . . . The state does not have to connect a weapon directly to the defendant and the crime. It is necessary only that the weapon be suitable for the commission of the offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Sivri*, 46 Conn. App. 578, 584, 700 A.2d 96, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997); see also *State* v. *Stevenson*, 53 Conn. App. 551, 572, 733 A.2d 253, cert. denied, 250 Conn. 917, 734 A.2d 990 (1999).

Moreover, the court carefully balanced the probative value of admitting the evidence of the April 18, 2003 incidents against the prejudicial impact the evidence would have on the defendant. To that end, the court limited the uncharged misconduct testimony to that which was necessary to support the victim's allegation that the defendant displayed a gun on April 18, 2003. Finally, the court instructed the jury after the testimony regarding both incidents as well as in its final charge that this evidence was being admitted for the limited purpose of corroborating the victim's testimony regarding the gun displayed by the defendant during the assault. Absent evidence to the contrary, a jury is presumed to have followed a court's limiting instructions. *State* v. *James G.*, 268 Conn. 382, 398, 844 A.2d 810 (2004). In light of the broad discretion vested in the trial court in balancing the probative value of the evidence and its prejudicial effect on the defendant, we conclude that the court did not abuse its discretion.

## II

The defendant next claims that he was deprived of a fair trial as a result of prosecutorial impropriety. First, the defendant claims that the prosecutor engaged in impropriety through her questioning of Willimantic police Officer Mike Haggerty as to the victim's character for truthfulness. Second, the defendant claims that several remarks made by the prosecutor during closing and rebuttal arguments constituted impropriety. We disagree.

The defendant concedes that he did not object at trial to any of the alleged impropriety and seeks review of his claims pursuant to *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004).[10] In *Stevenson*, our

[10] In *State* v. *Stevenson*, supra, 269 Conn. 572–73, our Supreme Court stated that with respect to unpreserved claims of prosecutorial impropriety, "it is unnecessary for the defendant to seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-

Supreme Court held that "following a determination that prosecutorial [impropriety] has occurred, regardless of whether it was objected to, an appellate court must apply the . . . factors [set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)] to the entire trial." *State* v. *Stevenson*, supra, 575.

Before addressing the *Williams* factors, we must first determine whether the prosecutor in fact engaged in impropriety. "[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) *State* v. *Serrano*, 91 Conn. App. 227, 231, 880 A.2d 183, cert. denied, 276 Conn. 908, 884 A.2d 1029 (2005). We will address the defendant's claims in turn.

A

We begin with the defendant's claim that the prosecutor engaged in impropriety through her questioning of Haggerty as to the victim's character trait for truthfulness. Specifically, the defendant refers to the following questions by the prosecutor: "Did you ever have the opportunity over the years in your dealings with [the victim] to form an opinion as to her character trait for

pronged *Golding* test." The court explained that applying *Golding* would result in "confusion and duplication of effort" because in reviewing claims of prosecutorial impropriety, a court must apply the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), which are identical to the third and fourth prongs of *Golding*. *State* v. *Stevenson*, supra, 573–74.

truthfulness? . . . Between your contact with [the victim] providing information [to the police] and your contact with her in the school system, contact with her when you would run into her, did you form an opinion as to her truthfulness?" We conclude that the defendant has raised an unpreserved evidentiary claim, rather than a claim of prosecutorial impropriety with constitutional implications.

The defendant raises two arguments in support of his claim. First, the defendant contends that the prosecutor elicited improper opinion testimony as to the ultimate issues of compulsion and the victim's credibility. This raises an evidentiary issue. See Conn. Code Evid. § 7-3 (a) ("[t]estimony in the form of an opinion is inadmissible if it embraces an ultimate issue to be decided by the trier of fact"). Second, the defendant contends that the prosecutor elicited improper vouching testimony. The defendant relies on *State* v. *Singh*, 259 Conn. 693, 793 A.2d 226 (2002), in support of his argument that it is improper to ask a witness to comment on the veracity of another witness' testimony. His reliance, however, is misplaced. In *Singh*, the prosecutor challenged the defendant's testimony on cross-examination by asking him whether the other witnesses had lied in their testimony. Id., 703–704. Our Supreme Court concluded that the prosecutor's questions were improper, concluding that "a witness may not be asked to characterize another witness' testimony as a lie, mistaken or wrong." Id., 712. In the present case, by contrast, the prosecutor did not question Haggerty as to the veracity of another witness' testimony. Rather, the prosecutor questioned Haggerty as to his opinion of the victim's character for truthfulness on the basis of his prior interaction with her. Our rules of evidence govern the admissibility of opinion evidence to prove a witness' character for truthfulness. See Conn. Code Evid. § 6-6 (a); see *State* v.

*Gould*, 241 Conn. 1, 19, 695 A.2d 1022 (1997). The propriety of the prosecutor's questioning, therefore, is an evidentiary matter.

In relying on *State* v. *Stevenson,* supra, 269 Conn. 572–73, and *State* v. *Williams,* supra, 204 Conn. 540, to raise a claim of prosecutorial impropriety, the defendant has merely couched an unpreserved evidentiary claim in constitutional terms. We have previously stated that "[r]obing garden variety claims [of an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature." (Internal quotation marks omitted.) *State* v. *Izzo,* 82 Conn. App. 285, 291 n.2, 843 A.2d 661, cert. denied, 270 Conn. 902, 853 A.2d 521 (2004). As the defendant's evidentiary claim is unpreserved, we decline to afford it review. See, e.g., *State* v. *Cosby,* 99 Conn. App. 164, 171, 913 A.2d 1068 ("[a]ssigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush" [internal quotation marks omitted]), cert. denied, 281 Conn. 920, 918 A.2d 273 (2007).

B

We next consider the defendant's claim that the prosecutor engaged in impropriety during closing and rebuttal arguments. Specifically, the defendant claims that the prosecutor improperly (1) referred to the improper opinion testimony of Haggerty and (2) vouched for the credibility of the victim. We conclude that none of the challenged statements by the prosecutor was improper.

1

First, the defendant contends that the prosecutor improperly referred to Haggerty's opinion testimony in her closing argument. Specifically, the prosecutor stated: "[Haggerty] knew [the victim] to be truthful. He

formed an opinion. He had known her for years. And through his contact with her . . . believed her to be truthful." As previously stated, the defendant did not object to the state's questioning of Haggerty at trial as to his opinion of the victim's character for truthfulness. In referring to this testimony in her closing argument, the prosecutor simply commented on the evidence admitted at trial. See, e.g., *State* v. *Farr*, 98 Conn. App. 93, 110, 908 A.2d 556 (2006). We therefore conclude that her remarks were not improper.

2

Second, the defendant argues that several statements by the prosecutor in closing and rebuttal arguments constituted improper vouching for the credibility of the victim. During closing argument, the prosecutor made the following remarks: "[The victim told police Detective Brian Walsh that] she was pretty sure [the gun from the April 18, 2003 incidents] was the gun [displayed by the defendant on April 3, 2003], but she wasn't sure— she wasn't sure about the gun. . . . If she was lying, why wouldn't she just say, 'Yeah, that's the gun.' . . . Why would she admit she wasn't sure? That goes to her credibility . . . ." In rebuttal argument, the prosecutor further stated: "[The victim] got into a car for drugs. It's going to make her look like a prostitute. . . . That is what happened that night, and despite how it may look, she tells the truth over and over and over again. . . . What motive does this young woman have to come here two years later to take the [witness] stand—she lives out of state—and relive this event? Her motive is because she's telling the truth. . . . She has painted herself in a really horrible light, but that is the truth."[11]

---

[11] In support of his argument that the prosecutor improperly vouched for the credibility of the victim during closing and rebuttal arguments, the defendant also refers to the following statement: "[The defendant] gives [the victim] his phone number in the name of Romeo. . . . He believes because she's out at that time of night, she must be a prostitute. . . . He

"As a general rule, prosecutors should not express their personal opinions about the guilt of the defendant, credibility of witnesses or evidence. . . . A prosecutor, however, is permitted to argue to the jury that the evidence and the reasonable inferences to be drawn therefrom should lead the jury to a conclusion as to the credibility of witnesses. . . . It is not improper for a prosecutor to comment on the credibility of a witness as long as he neither personally guarantees the witness' credibility nor implies that he has knowledge of the witness' credibility outside the record." (Citation omitted; internal quotation marks omitted.) *State* v. *Serrano*, supra, 91 Conn. App. 235. In addition, "the state may properly argue that the witnesses had no apparent motive to lie." (Internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 438, 902 A.2d 636 (2006).

Contrary to the defendant's argument, the prosecutor's remarks in the present case did not constitute improper vouching for the victim's credibility; the prosecutor did not personally guarantee the victim's credibility, nor did she indicate that she had knowledge outside of the record about the victim's credibility. Rather, the prosecutor's remarks constituted fair comment on the evidence presented at trial and the reasonable inferences to be drawn therefrom. In arguing to

has every reason to believe that she will—who's going to believe her? If she's a prostitute and he just sexually assaulted her, A, will she even report it, and B, who's ever going to believe her? That's why he gave her his name and number. He has no respect for her whatsoever."

The defendant, however, provides no analysis as to why this statement constitutes improper vouching for the victim's credibility. We therefore decline to consider this argument. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." (Internal quotation marks omitted.) *State* v. *John G.*, 100 Conn. App. 354, 355–56 n.2, 918 A.2d 986, cert. denied, 283 Conn. 902, 926 A.2d 670 (2007). Furthermore, even if we were to consider the defendant's argument, we would conclude that the prosecutor's remarks constituted permissible argument on the reasonable inferences to be drawn from the evidence and did not result in impropriety.

the jury that the victim was telling the truth and had no motive to lie, the prosecutor properly rebutted the defendant's testimony that the victim had consented to the sexual encounter and that he never threatened her with a gun. Accordingly, the defendant's claim of impropriety fails.

## III

The defendant next claims that the court's jury instructions improperly diluted or shifted the state's burden to prove compulsion, thereby depriving him of a fair trial. The defendant concedes that he neither filed a request to charge nor objected to the court's instructions and therefore requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Pursuant to *Golding*, "[a] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Vasquez*, 66 Conn. App. 118, 123, 783 A.2d 1183, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001). We decline to review the defendant's claim under *Golding* because it is not of constitutional magnitude.

The defendant asserts that under *State* v. *Smith*, 210 Conn. 132, 554 A.2d 713 (1989), the jury should have been instructed that the state had to disprove his claim of consent beyond a reasonable doubt on the sexual assault charges in order to prevent the diluting or shifting of the state's burden of proof on the element of compulsion.

In *Smith*, our Supreme Court stated: "It is likely that juries in considering the defense of consent in sexual assault cases, though visualizing the issue in terms of actual consent by the complainant, have reached their verdicts on the basis of inferences that a reasonable person would draw from the conduct of the complainant and the defendant under the surrounding circumstances. It is doubtful that jurors would ever convict a defendant who had in their view acted in reasonable reliance upon words or conduct of the complainant indicating consent, even though there had been some concealed reluctance on her part. *If a defendant were concerned about such a possibility, however, he would be entitled, once the issue is raised, to request a jury instruction that the state must prove beyond a reasonable doubt that the conduct of the complainant would not have justified a reasonable belief that she had consented.*" (Emphasis added.) Id., 141.

Although a defendant is entitled to request an instruction that the state must disprove consent beyond a reasonable doubt under *Smith*, our Supreme Court has not held that such an instruction is constitutionally mandated whenever the defense of consent is raised in sexual assault cases. *State* v. *Cotton*, 77 Conn. App. 749, 757–58, 825 A.2d 189, cert. denied, 265 Conn. 911, 831 A.2d 251 (2003). As a result, the defendant's claim that the court improperly failed to issue a *Smith* instruction is not of constitutional magnitude and, therefore, fails under *Golding*'s second prong.

IV

The defendant next claims that the court improperly admitted constancy of accusation evidence as substantive evidence without sua sponte issuing a limiting instruction. In support of his claim, the defendant refers to the testimony of three state's witnesses as to statements made by the victim describing the assault as well as an emergency room report containing similar statements and argues that pursuant to the constancy

of accusation doctrine, the court should have instructed the jury to consider this evidence only as corroboration of the victim's testimony and not as substantive evidence. The defendant concedes that he did not preserve his claim for appellate review and, therefore, seeks plain error review.

"[T]he plain error doctrine, which is now codified at Practice Book § 60-5 . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 86–87, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007). This court previously has stated that "[t]he failure by the trial court to give, *sua sponte*, an instruction that the defendant did not request, that is not of constitutional dimension and that is not mandated by statute or rule of practice is not such an obvious error that it will affect the fairness and integrity of and public confidence in the judicial proceedings." (Emphasis added; internal quotation marks omitted.) *State* v. *Johnson*, 65 Conn. App. 470, 478, 783 A.2d 1057, cert. denied, 258 Conn. 930, 783 A.2d 1031 (2001). In the present case, the challenged evidence was not introduced or admitted for purposes of constancy of accusation or any other limited purpose. Moreover, the defendant did not object to this evidence or request a limiting instruction at trial. He also did not file a request to charge on constancy of accusation or object to the court's charge as given. We therefore conclude that the court did not commit plain error.

V

The defendant's final claim is that the enhancement of his sentence under §§ 53a-40b and 53-202k must be reversed pursuant to the plain error doctrine.[12]

First, the defendant argues that he was improperly convicted under §§ 53a-40b and 53-202k and that the conviction must be reversed because these statutes are sentence enhancement provisions, not separate offenses. The defendant's argument is without merit. Our review of the judgment file reveals that pursuant to the defendant's pleas of nolo contendere, the court applied the sentence enhancements to the defendant's underlying conviction. In so doing, the court properly treated the charges under §§ 53a-40b and 53-202k as sentence enhancements and not as a conviction of separate offenses.

Second, the defendant argues that the court improperly accepted his plea of nolo contendere on the part B charge under § 53-202k because the issue of whether he used a firearm during the commission of the relevant underlying offenses in violation of § 53-202k should have been submitted to the jury.[13] The defendant relies on *Apprendi* v. *New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), in which the United States Supreme Court held that a defendant who is

---

[12] The defendant also requested review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, but did not provide any analysis of his claim under *Golding*'s four-pronged test. "[C]laims on appeal that are inadequately briefed are deemed abandoned. . . . This rule applies to claims that the defendant is entitled to . . . *Golding* review." (Internal quotation marks omitted.) *State* v. *Miller*, 59 Conn. App. 406, 410, 757 A.2d 69 (2000), cert. denied, 255 Conn. 942, 769 A.2d 60 (2001). Accordingly, we decline to afford the defendant's claim *Golding* review.

[13] In his reply brief, the defendant, in light of *State* v. *Fagan*, supra, 280 Conn. 100, withdrew his claim that the court improperly accepted his plea of nolo contendere on the part B charge under General Statutes § 53a-40b because the jury should have determined whether he had been released on bond at the time of the offenses. We therefore do not address this claim.

subject to a sentence enhancement provision has the right to a jury finding on the facts, with the exception of the fact of a prior conviction. The United States Supreme Court has stated, however, that a defendant's rights under *Apprendi* are waivable. See *Blakely* v. *Washington*, 542 U.S. 296, 310, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). In the present case, by knowingly and voluntarily pleading nolo contendere to the charge under § 53-202k, the defendant waived his right to a jury determination of the facts with respect to that charge. See, e.g., *State* v. *Winer*, 69 Conn. App. 738, 745, 796 A.2d 491, cert. denied, 261 Conn. 909, 806 A.2d 50 (2002).

The court therefore properly applied the sentence enhancement provisions of §§ 53a-40b and 53-202k and sentenced the defendant accordingly. Although we are mindful of the adverse collateral consequences that result from a felony conviction; see *State* v. *John*, 210 Conn. 652, 694, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989); we conclude that the plain error doctrine is inapplicable to the present case.

The judgment is affirmed.

In this opinion the other judges concurred.